## VAN NORSDALL *v.* SMITH.

1. SPECIFIC PERFORMANCE—PURCHASE OF LAND—DECREE—LIEN—PROPRIETY.

   On a bill by the owner of an interest in land against his co-owner to enforce specific performance of a contract by which such co-owner agreed to purchase complainant's interest, a decree for complainant giving him a lien for the agreed purchase price on more than the interest he agreed to convey is too broad.

2. SAME—WHEN GRANTED—INADEQUACY OF CONSIDERATION.

   Mere inadequacy of consideration, not accompanied by other elements of bad faith, is not sufficient ground for refusing specific performance unless so excessive as to furnish satisfactory evidence of fraud; but fraud is always a sufficient ground, and inadequacy of consideration may be, with other facts and circumstances, convincing evidence of fraud.

3. SAME—UNCONSCIONABLE CONTRACTS.

   Courts withhold relief by way of specific performance and leave complainants to their legal remedies, as well when the hardship of the contract appears from external facts, events, or circumstances, as when it appears from the provisions of the contract itself.

4. SAME.

   Where, in negotiating a contract for the sale of the interests

of certain heirs of an estate to the widow, their agent concealed a claim he had against the estate, and the effect of specific performance under the circumstances would be to materially diminish the sum she had a right to expect as widow, it will be denied.

Appeal from Eaton; Smith, J. Submitted June 14, 1905. (Docket No. 6.) Decided September 20, 1905.

Bill by Sarah Van Norsdall, G. Willis Smith, and Emma A. Clark against Emma Smith to compel the specific performance of a land contract. From a decree for complainants, defendant appeals. Reversed and bill dismissed.

*Joseph B. Hendee* (*Garry C. Fox*, of counsel), for complainants.

*S. B. Roe* and *Black & Reasoner*, for defendant.

OSTRANDER, J. Defendant is the widow, and complainants are sisters and a brother, respectively, of Levi Smith, who died intestate on or about January 18, 1903, owner of about 94 acres of land which had been his home. There are no other persons interested in his estate, excepting his creditors. After some negotiations, a written agreement was made between the widow on the one side and the sisters and brother on the other, dated February 25, 1903, by the terms of which the widow agreed to buy and the others to sell, for the sum of $675, to be paid on or before April 25, 1903, their interest in said land. The contract contains the further following stipulations and agreement:

" It is hereby further agreed that the said party of the second part, in consideration of said deed of said above-described premises, shall pay all claims and demands, of whatever name and nature, against the estate of Levy Smith, except such claims as are herein otherwise provided; that said second party shall also, in further consideration of said conveyance, erect a monument upon the grave of said Levi Smith, at a cost not less than three

hundred dollars, within two years from date hereof, and at the time of the conveyance of the premises herein shall make, execute, and deliver to the judge of probate a good and sufficient bond, to be approved by said judge, for the faithful performance and building and erecting of said monument.

"The said G. Willis Smith, in consideration of the payment to him of his share of said six hundred seventy-five dollars, hereby agrees, at the time of making the conveyance of said premises, to make, execute, and deliver a receipt in full of all notes now in the hands of other persons upon which said Levi Smith is surety, comaker, indorser, or in any manner obligated with the said G. Willis Smith, and which were given for the express benefit of G. Willis Smith."

Pursuant to this agreement, and on April 24, 1903, complainants executed and tendered to defendant a quitclaim deed of the premises, and also tendered her, marked "Paid," the only outstanding note, answering to the terms of the said written agreement, and they demanded of her the sum of $675. She refused to accept the deed, and refused to pay the money, and thereupon they filed the bill in this cause, setting out the said agreement and tender, and praying that the defendant be decreed to specifically perform said agreement. A demurrer to the bill was overruled, and an answer filed. Proofs were taken in open court, and the court made and entered a decree that said contract be performed. It is provided in the decree that complainants shall deposit with the register of the court the quitclaim deed and the promissory note, and that within 60 days thereafter the defendant pay to complainants $675, with interest from the 24th day of April, 1903; that if defendant neglected or refused within the time limited to pay such sum of money, with interest, and accept the deed of conveyance, the decree stand as a conveyance of the lands;—

"That upon the recording of such decree, or a duly certified copy thereof, these complainants shall have, and they are hereby given, a lien in the nature of and of the same force and effect as an execution levy for the sum of

six hundred and seventy-five dollars and interest thereon as aforesaid, upon all of the interest of the said defendant, Emma Smith, in and to the lands and premises, with the appurtenances, of which the said Levi Smith died seised and possessed, both as widow and heir at law of the said Levi Smith, deceased, and as grantee of the complainants; * * * and that such lien as aforesaid shall take precedence over any and all claim or claims which may be allowed the said defendant, Emma Smith, against the estate of Levi Smith, deceased, and which may be or might become a charge upon said lands for the payment thereof, and the said complainants shall have, and they are hereby given, the right, power, and authority at once, upon the recording of this decree as aforesaid, to enforce the said lien so created by this decree upon the lands and premises hereinbefore mentioned and described, and sell the same by execution sale to satisfy the amount due thereon, together with all interest, costs, and expenses of such sale, such sale to be in all things in accordance with the provisions of the statute relative to execution sales of real estate"—

And complainants were given their costs of the suit.

Among other objections made in the court below to the settlement of this decree was one that complainants were not entitled to a lien upon the defendant's interest in the lands. It is conceded in this court that the decree is too broad, and that the court had no power to decree a lien upon any interest in the land, except the interest which complainants proposed to convey. It is to be noted, also, that the decree does not order defendant to perform the contract in any other respect than is above stated. Defendant has appealed, complainants have not appealed, from the decree.

The land in question lies partly in Ingham and partly in Eaton county; that portion lying in Eaton, about 34 acres, having upon it the house and barn. Appraisers valued the estate, of which the widow was later appointed administratrix, at $2,700, $300 of which amount represented the personal estate. There was a mortgage upon the property of $165. Complainants' witnesses, some of them, valued the 34 acres in Eaton county at $1,200, and

the 60 acres in Ingham at $1,400. It is contended that specific performance of the contract should not be enforced: (1) Because of concealment of material facts by complainants' agent who negotiated the transaction. (2) Because defendant misconceived her legal rights and was ignorant of material facts. (3) Because the consideration for the money which defendant agreed to pay is inadequate. We will examine these contentions.

1. Reuben Clark, husband of complainant Emma A. Clark, seems to have undertaken for the complainants to sell to defendant their interest in the estate. On the other hand, defendant had the advice and counsel of her father and brother. It does not appear that complainants were more anxious or interested than was defendant to arrive at a conclusion. It is said, however, and is undisputed, that Reuben Clark had a personal claim against the deceased, one which he afterwards presented to the commissioners on claims, for nearly $700, of which defendant knew nothing, and of which Clark told her nothing. Defendant executed the contract with no knowledge that such demand existed. The commissioners allowed the claim at the sum of $345. Purchasers of land from heirs take it subject to debts and expenses of administration (*Flood* v. *Strong*, 108 Mich. 561; *Armstrong* v. *Loomis*, 97 Mich. 577); and it might seem, therefore, that the provision in the contract which required defendant to pay "all claims and demands, of whatever name and nature, against the estate of Levi Smith, except such claims as are herein otherwise provided," was an unnecessary and immaterial stipulation. As affecting the sum which defendant could afford to give for what she supposed she was buying, it was of very great importance that she should know the net value of the estate. It was mutually supposed by the parties and by Reuben Clark that defendant's interest in the land was an undivided one-half of it, and that the other undivided one-half was the interest of complainants. Of his demand, Mr. Clark, relating what took place at one meeting, testified:

"I told them they knew more about the indebtedness than I did, as I had no basis to figure from. She was the widow of Mr. Smith, and knew more about his business than I did, and, being administratrix of the estate, she knew more about matters than I did. I thought she might have an idea of all the claims which might be presented against the estate. I don't know as to whether she knew what claim I had or not. I didn't say anything about it that night. It would be optional with me whether I wanted to present it against the estate. I always calculated I had a first-class claim, if I wanted to present it. At that time I was not certain about presenting it. I had never at that time figured up the amount of my claim, and I hadn't said anything to the heirs about it, except my wife."

It is suggested by counsel for complainants that at that time there was nothing certain about his presenting it, and no evidence that at such time the possibility of his filing any claim had ever occurred to him; that he did not file it until after defendant had repudiated the contract, and after the bill in this case was filed. To my mind, this does not answer the objection. The widow was confronted with the proposition of buying the interest of three heirs. She had offered them $200 each. Reuben Clark, for the heirs, had declined to accept this amount, and was asking $300 for each. The cost of a tombstone, which all agreed it was proper to buy, the amount of the debts, everything which entered into the value of the interests proposed to be bought and sold, were gone over.

| | | |
|---|---|---|
| Excluding a claim presented by and allowed the father of defendant, the commissioners on claims have allowed claims to the amount of.. | $696 | 25 |
| There is the mortgage | 165 | 00 |
| Other outstanding debts, $50 to $75 | 60 | 00 |
| Tombstone at price agreed to be proper | 300 | 00 |
| Amount to be paid complainants, as per terms of the contract, $225 each | 675 | 00 |
| A total of | $1,896 | 25 |

The personal estate is by statute the property of the widow. The expenses of administration are estimated at

$100. The balance of the estate, then, would be from $400 to $500. These figures are produced to show of what importance it was that defendant should know that Reuben Clark had a demand of $691 against the estate.

Enough has been said, also, to explain the force of the third contention made for defendant. Mere inadequacy of consideration, not accompanied by other elements of bad faith, is not a sufficient ground for rescission of a contract or for refusing specific performance of it, unless so excessive as to furnish satisfactory evidence of fraud. Fraud is always a sufficient ground for refusing specific enforcement, and inadequacy of consideration may be, with other facts and circumstances, convincing evidence of fraud.

2. It is contended that defendant was and is entitled to a homestead, and that this right was unknown to her at the time she executed the contract. The answer of defendant does not advance this claim, and it is said by counsel for complainant that it is asserted for the first time in this court. It is argued, also, that at most it is a mistake of law, which cannot be relieved against. It may well be doubted if want of knowledge that she owned a larger estate in the land than she supposed she did, and was therefore buying a less valuable estate than all parties understood was being conveyed, can be called a mistake of law within the proper meaning of that term. In the view we take of the case, it is not necessary to discuss the proposition. While there are many matters set up in the answer concerning the designs and fraudulent conduct of complainants and their agent which are not proven, the fact remains, as has been pointed out, that the agent of complainants concealed from defendant a matter of vital importance in the transaction between them, the effect of which will be, if specific performance is decreed, to diminish materially the sum she had the right to expect would remain to her as widow. The amount of the difference is not large. Neither was the entire transaction a large one. The parties were not, when the contract was

made, on equal terms as to knowledge. Every unfair contract is in some measure unconscionable and hard. Courts withhold the peculiar relief asked for here, as well where the hardship appears from external facts, events, or circumstances as when it appears from the provisions of the contract itself, and leave complainants to their legal remedy.

It is perhaps proper to notice that if the decree should be modified to the extent counsel concede that it must be, and, as so modified, affirmed, complainants would have for their land an order that defendant pay them the agreed purchase price, and, if she did not, that they sell the very land they had conveyed to her, in the manner of execution sales, to pay themselves.

The decree is reversed, and a decree will be entered dismissing the bill of complaint, with costs of both courts to defendant.

CARPENTER, MCALVAY, GRANT, and MONTGOMERY, JJ., concurred.