## DENBY *v.* DORMAN.

1. WITNESSES—ATTORNEY AND CLIENT—PRIVILEGED COMMUNICATIONS.

    Where defendants knew that attorney was acting as attorney for plaintiff in negotiating contract, no privilege attached to communications between them relative thereto, even if it be conceded that attorney was acting for both parties.

2. FRAUDS, STATUTE OF—ORAL CONTRACTS.

    Acceptance by assignee of land contract, at assignor's request, of payments smaller than provided for in contract, in no way affected vendees' liability to make payments provided for, and therefore is not objectionable as oral modification of contract required by statute to be in writing.

3. SPECIFIC PERFORMANCE—BREACH OF CONTRACT—ESTOPPEL.

    Acceptance by assignee of land contract, at assignor's request, of payments smaller than provided for in contract, may not be urged by assignor as breach of contract in suit by assignee for specific performance of agreement to repurchase.

4. SAME—REMEDY OF GRACE.

    Remedy of specific performance is matter of grace rather than of right, and whether it will be granted is determined by peculiar circumstances of each case.

5. SAME—AGREEMENT TO REPURCHASE—EQUITY—MUTUALITY.

    Assignee, who without knowledge of value of property, purchased vendor's interest in land contract at his request on condition that he would repurchase in case assignee so requested in writing on being required to acquire title on foreclosure, is equitably entitled to specific performance of vendor's agreement to repurchase, although it was lacking in mutuality in that vendor could not compel resale.

6. HUSBAND AND WIFE—ESTATES BY ENTIRETIES.

    Interest of wife in property owned by her and her husband in estate by entireties is not her separate property.

As to effect of the statute of frauds upon the right to modify, by subsequent parol agreement, a written contract required by statute to be in writing, see annotation in L. R. A. 1917B, 144; 17 A. L. R. 10; 80 A. L. R. 539.

7. SAME—OBLIGATION OF WIFE—WIFE'S SEPARATE PROPERTY—STATUTES.

In suit against husband and wife for specific performance of agreement to repurchase land, deficiency decree against wife was not warranted, in absence of compliance with provisions of Act No. 158, Pub. Acts 1917, then in force; obligation not relating to her separate property.

8. SAME—ADMISSIONS.

Wife's statement that, ''we needed the money,'' in reference to sale of land contract by her and her husband and their agreement to repurchase, was not such admission on her part that consideration passed to her with reference to her separate property as created liability against her, in absence of compliance with Act No. 158, Pub. Acts 1917, then in force.

Appeal from Wayne; Black (Edward D.), J., presiding. Submitted November 3, 1932. (Docket No. 155, Calendar No. 36,836.) Decided January 3, 1933.

Bill by Marion Thurber Denby against Hyman D. Dorman and Rose A. Dorman for specific performance of an agreement to purchase land. Decree for plaintiff against both defendants. Defendants appeal. Affirmed as to defendant Hyman D. Dorman; reversed as to defendant Rose A. Dorman.

*Denby, Kennedy & Kennedy,* for plaintiff.

*Nathan D. Rosin* and *William A. Rhodes* (*Lee E. Joslyn,* of counsel), for defendants.

SHARPE, J. On November 2, 1926, Hyman D. Dorman and Rose A. Dorman, his wife, the defendants herein, entered into a contract to sell certain lots in the city of Detroit to Sam Ozeran and Rose Ozeran, his wife, for the sum of $40,000, of which $5,000 was then paid and the balance to be paid in monthly payments of $275 for the first three years and $300 per month thereafter, the entire sum to be paid within eight years.

On December 17, 1928, the defendants entered into a written agreement with the plaintiff herein which, after reciting the execution of the foregoing contract and that there was then unpaid thereon the sum of $33,436.88, and that there was a mortgage on said lots in the sum of $18,000, and that defendants were desirous of selling their equity therein, and that plaintiff had not seen said lots and did not know their value, provided that defendants should deed said lots to plaintiff subject to said mortgage and assign the land contract to her; that plaintiff would require prompt payment of the sums due under the contract; that if such payments became in default for more than three months, plaintiff should take proceedings for the foreclosure of said contract or summary proceedings to recover possession of said lots, and that, should plaintiff be required in such proceedings to acquire title to said lots, defendants, if requested in writing so to do, would purchase the lots from plaintiff, paying her therefor the amount due under said land contract at that time.

There was default in the payments by Mr. and Mrs. Ozeran, and plaintiff foreclosed the contract by a suit in chancery, bid the lots in at the sale, and received a deed therefor from the circuit court commissioner on September 30, 1931.

On December 11, 1931, plaintiff, through her attorney, Joseph J. Kennedy, made demand on the defendants to purchase the property from her pursuant to said agreement, and, on their failure to comply therewith, filed the bill of complaint herein for an accounting, offering to perform on her part, and praying for the specific performance of the contract. Defendants, by their attorney, filed an answer thereto. After proofs taken in open court, a decree was entered providing for the payment to

plaintiff by defendants of the sum of $31,839.80, declaring the sum to be a lien on the property, providing for a sale thereof and decree against defendants for deficiency. The defendants have appealed therefrom.

Joseph J. Kennedy, of the law firm of Denby, Kennedy & Kennedy, conducted the negotiations for the plaintiff which led to the execution of the deed, assignment of the land contract and the agreement. His testimony of his conversations with the defendant (Hyman D. Dorman) at such times was received over the objection of defendants' counsel that the relation of attorney and client then existed and the communications were privileged.

It appears that this law firm had been acting for the defendants in certain matters prior to that time. Defendant testified that, when in their office, he stated to Joseph J. Kennedy that he needed money ''badly'' and would like to sell the Ozeran contract; that the terms were discussed and later agreed upon; that he did not see Mrs. Denby at all, and that when Kennedy had the papers prepared he and his wife went to the law office and signed them. The absence of the plaintiff clearly informed the defendant that Kennedy was acting for her in the matter, but, if it be conceded that he was acting for both of them, no privilege attached to the communications between them relative thereto. Potter, Michigan Evidence, § 251; *Dikeman* v. *Arnold,* 78 Mich. 455; *People* v. *Andre,* 153 Mich. 531; 28 R. C. L. p. 566; 40 Cyc. p. 2368.

While the payments provided for in the land contract were $275 per month, it appears that the defendants had accepted payments of $250 from March, 1928, to December, 1928. Plaintiff accepted this amount as payment until February 27, 1931,

after which default arose, resulting in the foreclosure proceedings referred to. Defendants insist that by the acceptance of monthly payments of $250, when the contract provided for $275, the plaintiff breached her contract with them, and for that reason may not have specific performance thereof.

It is undisputed that defendants had been accepting the monthly payments of $250 for some time prior to the assignment to plaintiff. The acceptance of this amount thereafter by Mr. Kennedy, who acted for plaintiff in the matter, was at the personal request of the defendant Hyman D. Dorman. Defendants' counsel insist that, as the statute required the land contract to be in writing, its terms may not be modified by the oral agreement to accept the lesser payment. *Reid* v. *Bradstreet Co.*, 256 Mich. 282. This agreement in no way affected the liability of the vendees to make the monthly payments of $275. This could at any time have been enforced by plaintiff, and the only reason she did not do so, disclosed by the record, was on account of the request of the defendant Hyman D. Dorman that she should not, and her compliance therewith may not here be urged by him as a breach on her part which relieved him from performance of his contract with her.

It is urged that, as the plaintiff might have retained the property bid in by her at the sale, and as the defendants were obligated only to repurchase it from her "if requested in writing" so to do, the contract lacked mutuality and should not be specifically enforced in a court of equity. Reliance is placed on the holding in *Maynard* v. *Brown*, 41 Mich. 298, where, under a somewhat similar provision in a contract, this court declined to grant specific performance.

As a general rule, a party complaining that another has failed to fulfill his engagements is supposed to have adequate redress in an action at law for damages. The right to specific performance is dependent upon the nature of the obligation sought to be enforced, and—

"whether, in view of all the facts and those doctrines which are interwoven with the very texture of equity jurisprudence, and in view of the specific peculiarities presented, and the settled principles and maxims of the court, it is right and proper to entertain the case and administer relief." *Buck* v. *Smith,* 29 Mich. 166, 170 (18 Am. Rep. 84).

"The remedy of specific performance is a matter of grace rather than of right. *Mowat* v. *Walsh,* 236 Mich. 391. Whether or not specific performance will be granted is determined by the peculiar circumstances of each case." *Worsham* v. *McCall,* 259 Mich. 630, 632.

Had the contract given the defendants the option to repurchase, it might have been specifically enforced by them. *Mier* v. *Hadden,* 148 Mich. 488 (118 Am. St. Rep. 586, 12 Ann. Cas. 88); *Jefferson* v. *Brix,* 244 Mich. 688. It may be well said that such a contract would be lacking in mutuality, as performance could not have been enforced by the person giving the option. And if specific performance of an offer to sell may be enforced, may not an offer to purchase be also so enforced?

In *Pearson* v. *Gardner,* 202 Mich. 360 (L. R. A. 1918 F, 384), it was said:

"It is true that in the case first cited the action was brought by the vendee rather than the vendor, but it is well settled that specific performance is granted in favor of the vendor of land as freely as in favor of the vendee, though the relief actually

obtained by him is the recovery of money, the purchase price.''

The rule thus stated seems to be general.

''It is well established that in a case in which specific performance is otherwise a proper remedy the vendor may obtain specific performance of a contract for the sale of realty, the vendee being ordered to accept the deed and to pay the purchase price, or if he refuses to accept a conveyance and pay the purchase price, the land may be ordered sold to satisfy the vendor's so-called 'lien,' and execution issue for any unsatisfied balance of the purchase money remaining after the sale of the land. In such case the right does not depend upon the inadequacy of legal remedy, although where damages at law are adequate, the relief will not be granted. Whether or not a vendor will be granted specific performance rests in the sound judicial discretion of the court. So the relief by specific performance is given to a vendor of leasehold interests.'' 58 C. J. pp. 1029–1031.

See, also, 25 R. C. L. pp. 228, 270, 273; 58 C. J. p. 1024.

There are appealing equities tending strongly to support plaintiff's claim for relief. She had no desire to purchase the land contract from the defendants. It states that she—

''has not seen the above-described land and does not know its value, but is willing on the terms hereinafter stated to purchase the equity of the said parties of the first part in the said land.''

The terms referred to included the undertaking of the defendants to repurchase it from her as therein provided. The plaintiff, who made this pur-

chase at the request of the defendants, and without knowledge of the value of the property, now asks that a court of equity compel the defendants to do what they promised in said contract that they would do in case foreclosure was had. She has fully performed on her part, and, under the facts presented, is entitled to performance on the part of the defendants.

The decree required the defendants to pay to the plaintiff the amount found due to her under the terms of the agreement, and that, in default, the premises be sold, and that, in case of a deficiency, the plaintiff have execution against both of the defendants therefor. Defendants insist that a personal decree should not have been rendered against Mrs. Dorman.

Counsel concede that the agreement did not contain the recital "that no undue influence or constraint has been exerted against the wife in the execution thereof," as required by Act No. 158, Pub. Acts 1917, as then in force. They do insist that, as she testified "we needed the money and sold the contract," there was "special consideration running" to her. In *Kies* v. *Walworth,* 250 Mich. 34, 36, it was said:

"Apart from this statute, a married woman can become a joint debtor with her husband, if proper consideration runs to her with reference to her separate property."

The interest of a wife in property owned by her and her husband in an estate by the entireties is not her "separate property." *Ehinger* v. *Fiske, ante,* 240. Her statement that "we needed the money and sold the contract" was not such an admission on her part that a consideration passed to her with

reference to her separate property as created a liability such as is here claimed.

The decree will be modified in this respect, and, as so modified, affirmed. No costs will be allowed.

McDONALD, C. J., and CLARK, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.