### LEVITZ v. CAPITOL SAVINGS & LOAN CO.

1. FRAUD—EVIDENCE—SUBORDINATION AGREEMENT.
   Evidence *held*, insufficient to invalidate agreement subordinating plaintiffs' mortgage to that of defendant's on the ground of fraud, where statements made at time of its execution were either true or promissory in character and latter were partially carried out by promisor.

2. MORTGAGES—SUBORDINATION AGREEMENT—VALIDITY.
   Agreement subordinating one mortgage to another is valid when based on a valuable consideration.

3. CONTRACTS—CONSIDERATION—DEFINITION.
   Consideration necessary to support a contract is a benefit to the promisor or a detriment to the promisee.

4. SAME—CONSIDERATION FROM A THIRD PARTY.
   Consideration to support a contract is sufficient if given in whole or in part in exchange for the promise although it moves from a third party.

5. SAME—ADEQUACY OF CONSIDERATION.
   It is not necessary that there be an equal exchange of consideration as the law does not inquire into the adequacy thereof.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 18, 1934. (Docket No. 142, Calendar No. 37,758.) Decided June 4, 1934.

Bill by John Levitz and wife against Capitol Savings & Loan Company, a Michigan corporation, to have a mortgage declared a first lien and for other relief. Decree for plaintiffs. Both parties appeal. Reversed and bill dismissed.

*Ambrose A. Hudock,* for plaintiffs.

*Leithauser, Brown & Babcock* (*Alva M. Cummins,* of counsel), for defendant.

EDWARD M. SHARPE, J.   March 16, 1927, plaintiffs
sold to one Blatny certain premises on land contract
for the sum of $2,200 with nothing paid down.   In
June, 1928, Blatny made an application for a loan
on the property from defendant company.   The loan
was approved in the sum of $5,500, the purpose be-
ing to construct a two-family house on the prem-
ises.   August 28, 1928, Blatny and wife executed the
mortgage to defendant and the same was recorded
August 29, 1928, although at this time no money was
paid to Blatny.

Prior to this time plaintiffs had loaned various
sums of money to Blatny and had sold him some
furniture, and on September 24, 1928, plaintiffs and
Blatny agreed that the total indebtedness owing to
plaintiffs by Blatny was the sum of $3,184.50.   On
September 24, 1928, plaintiffs and Blatny met in the
office of defendant company and as a result of a
conference it was agreed that the defendant com-
pany was to pay plaintiffs the sum of $1,140.50, no
part of which went into the construction of the build-
ing.   On September 24, 1928, Blatny and wife exe-
cuted a mortgage to plaintiffs for the balance of the
latter's claim in the sum of $2,044.   At this time
plaintiffs delivered to Blatny a warranty deed of
the property.   Blatny and wife on the same day
conveyed their interest in the property by warranty
deed to C. W. Raymoure.   This deed was recorded
October 9, 1928.   The mortgage from Blatny to
plaintiffs was recorded September 27, 1928.   The
deed to Raymoure recites that it is subject to a mort-
gage of $5,500 to defendant company and a second
mortgage for $2,044 to plaintiffs.

Blatny proceeded to erect the building and de-
fendant made advances to practically the full amount
of its mortgage.   When the mortgage from Blatny
to defendant became in default, the latter proceeded

to foreclose and on April 22, 1929, bid in the property at sheriff's sale for the amount of its debt. The sheriff's deed was recorded April 26, 1929.

Raymoure, who had held the legal title of the property since September 24, 1928, wishing to refinance the mortgage, appealed to defendant for a new mortgage loan. This loan was approved in the sum of $5,500 and on October 9, 1929, the mortgage was executed and on January 17, 1930, was recorded. After the execution of this mortgage the defendant had an investigation of title made by the Burton Abstract & Title Company, who reported that title could be insured in Raymoure as mortgagor by a discharge of the plaintiffs' mortgage and redemption by Raymoure of the sheriff's deed to defendant. The defendant gave Raymoure a quitclaim deed on January 17, 1930, which was recorded January 22, 1930. Instead of securing a discharge of plaintiffs' mortgage, Raymoure secured the following subordination agreement:

"October 7, 1929.
"Detroit, Michigan.
"Recorded Jan. 22, 1930, at 2:30 p. m.
"Otto Stoll, Register.

"The undersigned, John Levitz and Adele Levitz, husband and wife, are the holders of a certain mortgage, in the amount of $2,044, dated September 24, 1928, and recorded September 27, 1928, in liber 2211 page 562 of mortgages in the office of the register of deeds, Wayne county, Michigan, which said mortgage was made by John Blatny and Paulina Blatny, husband and wife, of Detroit, Wayne county, Michigan, as mortgagors and John Levitz and Adele Levitz, husband and wife, of the same place, as mortgagees. Said mortgage covers property known and described as:

"Lot 9 Mayflower subdivision of part of northeast ¼ of northeast ¼ of section 9, town 1, south

range 12 east, according to the plat thereof as recorded in liber 41 on page 6 of plats.

"The undersigned, for and in consideration of one dollar and other valuable consideration, the receipt whereof is hereby confessed and acknowledged, hereby agrees to and with the Capitol Savings & Loan Company, a Michigan corporation, of Lansing, Michigan, that it may take a first mortgage on said property, in the amount of $5,500.

"The undersigned agrees that said first mortgage of said Capitol Savings & Loan Company shall and will constitute a lien on said property prior to the mortgage lien of the undersigned thereon.

"(Signed)   John Levitz
"(Signed)   Adele Levitz."

(Witnessed and acknowledged.)

At the time the above agreement was signed, Raymoure promised plaintiffs that he would assume and pay the amount still owing plaintiffs. Raymoure later did make a few payments to plaintiffs. Upon default in the Raymoure mortgage, the same was foreclosed by advertisement and sold at sheriff's sale on August 17, 1931, for $5,519.92, and deed issued to defendant company. A few days before the date of this sale and on July 30, 1931, plaintiffs filed a bill of complaint to have their mortgage declared to be a first lien on the premises involved. Plaintiffs alleged that the subordination agreement was obtained by fraud and misrepresentation on the part of Raymoure and further that there was no consideration for such agreement, denying the receipt of the dollar recited in the instrument or of any other consideration. The lower court held that plaintiffs' mortgage should be a prior lien upon the premises except to the extent that defendant had furnished consideration by giving up its right to possession of the premises, the measure of defendant's lien being the fair rental value of the premises during the

period defendant was delayed in taking possession. Defendant appealed and plaintiffs filed a cross-appeal claiming a prior lien to the full amount of their mortgage and that defendant was entitled to no credit whatsoever for the rental value of the property.

We think that the only question involved is the validity of the subordination agreement.

Plaintiff claims fraud as one of the reasons for invalidating the agreement. However, there is no proof in the record that would substantiate fraud. When Raymoure secured plaintiffs' signature to the subordination agreement, plaintiffs were told that he wanted to get Blatny's name off the property and that Raymoure would assume and pay Blatny's mortgage indebtedness. Such statements do not constitute fraud. The first statement was true and the second statement was a mere promise to do something in the future, a part of which was carried out by Raymoure. We also think plaintiffs were somewhat negligent in failing to read the agreement or have someone read it to them.

A subordination agreement is valid when based on a valuable consideration. 1 Jones, Mortgages (8th Ed.), 1105; *Wayne International Building & Loan Ass'n* v. *Moats,* 149 Ind. 123 (48 N. E. 793); *Fudickar* v. *Monroe Athletic Club,* 49 La. Ann. 1457 (22 South. 381); *Mutual Life Ins. Co. of New York* v. *Sturges,* 33 N. J. Eq. 328; *Frost* v. *Yonkers Savings Bank,* 70 N. Y. 553 (26 Am. Rep. 627); *Clason* v. *Shepherd,* 6 Wis. 369; *Grunert* v. *Becker,* 100 Mich. 50; *Shapero* v. *Picard,* 235 Mich. 481.

The consideration necessary to support a contract is a "benefit to the promisor or a detriment to the promisee." 1 Williston, Contracts, § 102; *Sanford* v. *Huxford,* 32 Mich. 313, 315 (20 Am. Rep. 647);

*Smith* v. *Maxey,* 186 Mich. 151, 165; *Steep* v. *Harpham,* 241 Mich. 652, 656.

Prior to the execution of the subordination agreement on October 7, 1929, the defendant had foreclosed the Blatny mortgage and in the absence of redemption would have the right of possession on April 22, 1930. This right was surrendered when defendant executed a quitclaim deed of the property to Raymoure for the purpose of making redemption of the Blatny mortgage. After the execution of the subordination agreement, the defendant lost all recourse on the guaranty of the Union Title & Guaranty Company, which had guaranteed the Blatny mortgage to be a first mortgage on the premises. In addition to these detriments to defendant, there was a benefit to plaintiffs in that plaintiffs secured Raymoure's promise to pay the principal and interest on the Levitz mortgage, a part of which promise was carried out by Raymoure. That this consideration to plaintiffs moved from Raymoure, a third party, rather than from the defendant, is immaterial. *Londner* v. *Perlman,* 129 App. Div. 93 (113 N. Y. Supp. 420). It is not necessary that there be an equal exchange of consideration. The law does not inquire into the adequacy of the consideration. 1 Williston, Contracts, § 115. It is enough if the consideration is given, in whole or in part, in exchange for the promise.

The decree of the trial court is reversed and plaintiff's bill of complaint dismissed. Defendant may have costs.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred. BUSHNELL, J. did not sit.