HARWOOD v RANDOLPH HARWOOD, INC

Docket No. 62117. Submitted December 13, 1982, at Detroit.—Decided March 10, 1983.

Dorene A. Harwood brought suit in Oakland Circuit Court against Randolph Harwood, Inc., for breach of an employment contract. The court, Gene Schnelz, J., entered judgment for the defendant, holding that the written instrument submitted by the plaintiff was a sham not really intended to create a contractual relationship between the parties. The plaintiff appeals alleging numerous errors. *Held:*

1. The trial court did not err in considering parol evidence of the parties' intentions because such evidence was offered to show that the written instrument was a sham not really intended to create a contractual relationship between the parties.

2. The trial court properly admitted evidence of certain statements made by the plaintiff's deceased husband, the former sole shareholder of defendant corporation. Evidence of those statements was admitted to show the husband's then-existing state of mind and was not inadmissible hearsay.

3. The trial court erred by holding that there was no accountant-client privilege. Any error, however, was harmless. The testimony indicated that the accountant was acting on behalf of both the plaintiff and the defendant. The privilege at most belonged jointly to plaintiff and defendant and neither party could assert the privilege against the other party.

4. The trial court did not err by considering evidence of the inadequacy of the consideration for the contract. The defendant did not seek to have the alleged contract set aside for inadequacy of consideration but relied on the lack of consideration as

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contracts § 77.
[2, 3] 1 Am Jur 2d, Accountants § 13.
Privilege against disclosure of matters arising out of transactions or relationship between accountant and client. 38 ALR2d 670.
[4] 17 Am Jur 2d, Contracts § 102.

evidence that the contract was a sham. Evidence regarding the adequacy of consideration is relevant to show fraud.

5. The trial court did not err so as to require reversal in holding that the alleged contract between the plaintiff and defendant corporation was illegal and, therefore, void. The trial court necessarily found the alleged contract to be a sham in order to hold that it was illegal. Any error by the trial court in considering or resolving the illegality of the alleged contract was harmless.

Affirmed.

1. CONTRACTS — PAROL EVIDENCE.

Parol evidence may properly be admitted in a dispute over a contract to show that the written instrument was a sham not really intended to create a contractual relationship between the parties.

2. ACCOUNTS AND ACCOUNTING — ACCOUNTANT-CLIENT PRIVILEGE.

Except by written permission of the client, individual, firm, or corporation or the heir, successor, or personal representative of the employer, a certified public accountant, or a person employed by a certified public accountant, shall not disclose or divulge, nor be required to disclose or divulge information relative to and in connection with an examination or audit of, or report on, any books, records, or accounts which the certified public accountant or a person employed by the certified public accountant was employed to make; the information derived from or as the result of professional service shall be considered confidential and privileged (MCL 339.713; MSA 18.425[713]).

3. ACCOUNTS AND ACCOUNTING — PRIVILEGED COMMUNICATION.

Communications to an accountant jointly employed by two parties creates no accountant-client privilege that can be asserted by one party against the other party.

4. EVIDENCE — CONTRACTS — ADEQUACY OF CONSIDERATION.

Evidence regarding the adequacy of consideration in a contractual relationship is relevant to show fraud and any evidence having a tendency to make the existence of a fact of consequence to the determination of the action more or less probable is relevant (MRE 401).

*Leonard A. Suidara, P.C.* (by *Susan E. Morrison*), for plaintiff.

*Serman & Leh, P.C.* (by *John M. Leh*), for defendant.

Before: CYNAR, P.J., and N. J. KAUFMAN and MACKENZIE, JJ.

PER CURIAM. This was an action for breach of an alleged contract of employment. After a nonjury trial, the trial court found for defendant, and plaintiff appeals by right.

I

Plaintiff argues that the written contract between the parties was unambiguous and that the trial court therefore erred by considering parol evidence of the parties' intentions. However, such evidence was properly considered here because it was offered to show that the written instrument was a sham not really intended to create a contractual relationship between the parties. *Tepsich v Howe Construction Co,* 377 Mich 18, 23-25; 138 NW2d 376 (1965); *Goodwin, Inc v Orson E Coe Pontiac, Inc,* 392 Mich 195, 204; 220 NW2d 664 (1974); *NAG Enterprises, Inc v All State Industries, Inc,* 407 Mich 407, 410-411; 285 NW2d 770 (1979).

II

Plaintiff argues that testimony concerning certain statements made by Randolph Harwood was inadmissible hearsay. Randolph Harwood, now deceased, was plaintiff's husband and was defendant's sole shareholder until December, 1976, when his interest in the corporation was sold to Ronald Clarke, his nephew. The alleged contract of employment was entered into on May 1, 1973. The

statements at issue indicated that Randolph Harwood intended the contract with his wife as a device to enable him to collect social security while continuing to work for what would be, in effect, the same salary. Plaintiff contends that these statements were not sufficiently against Randolph Harwood's penal or pecuniary interests to render them admissible pursuant to MRE 804(b)(3). We need not address this contention, however, because the trial court properly admitted evidence of the statements pursuant to MRE 803(3) to show Randolph Harwood's then-existing state of mind.

III

Plaintiff correctly points out that the trial court erred by holding that there was no accountant-client privilege. See MCL 339.713; MSA 18.425(713), which provides:

"Except by written permission of the client, individual, firm, or corporation or the heir, successor, or personal representative of the employer, a certified public accountant, or a person employed by a certified public accountant, shall not disclose or divulge, nor be required to disclose or divulge information relative to and in connection with an examination or audit of, or report on, any books, records, or accounts which the certified public accountant or a person employed by the certified public accountant was employed to make. The information derived from or as the result of professional service shall be considered confidential and privileged. This section shall not be construed as prohibiting a certified public accountant whose professional competence has been challenged in a court of law or before an administrative agency from disclosing information otherwise privileged as part of a defense to the court action or administrative hearing."

However, any error in this regard was harmless. The testimony of the accountant indicated that he was employed in his professional capacity by Randolph Harwood, plaintiff, and defendant corporation, but that his work for plaintiff was limited to the preparation of the joint income tax returns of Randolph Harwood and plaintiff. We will nevertheless assume without deciding that plaintiff had standing to assert the privilege, either in her own right or as Randolph Harwood's heir. We will also assume without deciding that the subject matter of the accountant's testimony was information derived from, or as the result of, professional service and that it was not placed outside the privilege as information derived from a communication in furtherance of a future crime.

The testimony of the accountant showed that he was acting at least in part on behalf of defendant corporation in his dealings with the alleged contract. Therefore, the privilege at most belonged jointly to plaintiff and defendant and neither one could assert it against the other. Michigan courts apply an analogous rule to communications made to an attorney employed by both parties. *Cady v Walker,* 62 Mich 157; 28 NW 805 (1886); *Carpenter v Carpenter,* 154 Mich 100; 117 NW 598 (1908); *Denby v Dorman,* 261 Mich 500; 246 NW 206 (1933). Jurisdictions which have recognized an accountant-client privilege by statutes similar to ours have drawn an analogy to the attorney-client privilege and have held that communications to an accountant jointly employed by the parties created no privilege that one party could assert against the other. *Pattie Lea, Inc v Dist Court,* 161 Colo 493; 423 P2d 27 (1967); *Gearhart v Etheridge,* 232 Ga 638; 208 SE2d 460 (1974).

IV

Plaintiff argues that the trial court erred in

considering whether the amount to be paid to her under the alleged contract was reasonable in view of the amount of work she was required to perform. Plaintiff relies on cases which hold that courts will not ordinarily inquire into the adequacy of consideration. *Levitz v Capitol Savings & Loan Co,* 267 Mich 92, 97; 255 NW 166 (1934); *Harris v Chain Store Realty Bond & Mortgage Corp,* 329 Mich 136, 145; 45 NW2d 5 (1950). Here, however, defendant did not seek to have the alleged contract set aside for inadequacy of consideration. Rather, defendant relied on the lack of consideration as evidence that the contract was a sham.

Michigan courts have recognized that evidence of the adequacy of consideration is relevant to show fraud. *Van Norsdall v Smith,* 141 Mich 355, 361; 104 NW 660 (1905); *Wroblewski v Wroblewski,* 329 Mich 61, 67; 44 NW2d 869 (1950). Any evidence having a tendency to make the existence of a fact of consequence to the determination of the action more or less probable is relevant. MRE 401. Evidence of a lack of consideration tends to make it more probable that the contract was a sham, just as it would tend to make more probable the existence of fraud. The trial court did not err by considering the evidence of inadequacy of consideration.

V

Plaintiff argues that the trial court erred by holding that the alleged contract between plaintiff and defendant corporation was illegal and, therefore, void. Plaintiff points out that defendant did not plead the illegality of the alleged contract as an affirmative defense. Plaintiff further contends that the alleged contract was not, in fact, illegal.

The affirmative defense which defendant pled was that the alleged contract was a sham, not really intended to create a contractual relationship between the parties. Defendant's theory was that the alleged contract was merely a device to disguise income earned by Randolph Harwood as income earned by plaintiff, his wife. Authority for this affirmative defense may be found in *Keller v Holderman,* 11 Mich 248 (1863). See also *Kilpatrick Bros, Inc v International Business Machines Corp,* 464 F2d 1080, 1082-1083 (CA 10, 1972), and the case cited therein.

The trial court held that the alleged contract was illegal because it enabled Randolph Harwood to escape tax liability by disguising income he earned as income earned by his wife. It is therefore apparent that the trial court necessarily found the alleged contract to be a sham in order to hold that it was illegal. Any error by the trial court in considering or resolving the illegality of the alleged contract was harmless. The trial court necessarily made the findings required for defendant to prevail on the affirmative defense that it raised in order to reach the issue of the legality of the contract.

Affirmed.