LAWRENCE v INGHAM COUNTY HEALTH DEPARTMENT
FAMILY PLANNING/PRE-NATAL CLINIC

Docket No. 91098. Submitted January 22, 1987, at Lansing. Decided May 19, 1987. Leave to appeal applied for.

Ethel Lawrence went to the Ingham County Health Department Family Planning/Pre-Natal Clinic for a pregnancy test. The test results showed that Lawrence was pregnant. She continued routine prenatal treatment with the clinic, and then went to St. Lawrence Hospital when she began having labor pains and underwent an emergency Caesarean section. The baby suffered fetal distress and prenatal asphyxia, resulting in permanent, serious brain damage. The child was transferred to Edward W. Sparrow Hospital. Ethel Lawrence, individually and as next friend of Jessica Lawrence, the child, and Douglas J. Lawrence filed suit against the Ingham County Health Department Family Planning/Pre-Natal Clinic, St. Lawrence Hospital, Edward W. Sparrow Hospital, and various doctors in Ingham Circuit Court alleging inter alia that the clinic breached an implied contract between itself and plaintiffs that if Ethel Lawrence followed the clinic's advice, it would provide her and the unborn child with appropriate prenatal care. The court, Carolyn Stell, J., found that plaintiffs failed to state a cause of action for breach of contract and granted summary disposition in favor of defendant clinic. The court concluded that plaintiffs failed to plead facts that would support a finding of adequate consideration and that plaintiffs' claim must therefore fail. Plaintiffs appealed.

The Court of Appeals *held:*

Ethel Lawrence's acceptance of advice on health care conducive to the well-being of her unborn baby cannot be deemed consideration for a contract. Plaintiffs' claim of consideration is so clearly unenforceable as a matter of law that no factual development can possibly justify their right to recover on the theory of defendant's breach of an implied contract in fact.

Affirmed.

SAWYER, J., dissented. He would hold that a person may

REFERENCES
Am Jur 2d, Contracts §§ 11, 12, 85, 86, 92, 95-97.

contractually obligate himself to follow the directions of a physician, or to forego an action he is legally privileged to perform, and that, where such an obligation is given in exchange for the promise of another to perform services, that obligation serves as consideration and a contract is established. He would find that plaintiffs have stated a claim, however tenuous it may be. He would reverse.

1. CONTRACTS — MUTUALITY OF OBLIGATION — CONSIDERATION.
     Mutuality of obligation is an essential element of a contract where want of mutuality would leave one party without a valid or viable consideration for his promise.

2. CONTRACTS — IMPLIED CONTRACTS — CONSIDERATION — HEALTH.
     An implied promise to follow the advice of a prenatal clinic's medical staff regarding prenatal health care is not a legally enforceable promise; therefore, the acceptance of such advice cannot be deemed consideration for an implied contract that if the advice is followed appropriate prenatal care will be rendered.

*Konkel & Dimanin, P.C.* (by *John G. Konkel*), for plaintiffs.

*Smith, Haughey, Rice & Roegge* (by *Susan J. Bradley*), for defendant.

Before: M. J. KELLY, P.J., and SAWYER and M. R. KNOBLOCK,* JJ.

M. J. KELLY, P.J. Plaintiffs appeal as of right from an order of summary disposition granted under MCR 2.116(C)(8) in favor of defendant Ingham County Health Department Family Planning/ Pre-Natal Clinic. We affirm.

Plaintiffs filed this three-count complaint following the birth of their daughter, Jessica Lawrence. According to the allegations in the complaint, which are taken as true for purposes of deciding and reviewing a motion under MCR 2.116(C)(8), plaintiff Ethel Lawrence first visited defendant

---

* Circuit judge, sitting on the Court of Appeals by assignment.

clinic on December 13, 1979, for a pregnancy test. She reported her last menstrual period as October 19, 1979, and tested positive for pregnancy. Plaintiff then continued routine prenatal treatment with the clinic. On August 19, 1980, she appeared at defendant St. Lawrence Hospital in labor, where she underwent an emergency Caesarean section. Jessica Lawrence suffered fetal distress and prenatal asphyxia, which plaintiffs theorized could have been prevented by applying standard procedures for postmature fetuses. Following the delivery, Jessica was resuscitated and transferred to defendant Edward W. Sparrow Hospital. She sustained permanent, serious brain damage.

Plaintiffs' original complaint alleged various acts of negligence on the part of the individual physicians, the clinic and the two hospitals. Defendant clinic was granted summary disposition as to the negligence claims on the ground of governmental immunity. See *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984). Plaintiffs do not appeal from that ruling.

Plaintiffs' third amended complaint included two counts of breach of contract.[1] In paragraphs 4 and 5 of Count II of their third amended complaint, plaintiffs allege breach of an enforceable agreement between plaintiffs Ethel and Douglas Lawrence and the clinic and clinic physicians:

> 4. That thereafter, Defendant Ingham County Health Department Family Planning/Prenatal Clinic agreed to accept Plaintiff Ethel Lutman Lawrence as a patient and Plaintiff Ethel Lutman

---

[1] Although plaintiffs plead contract implied in law, we interpret their claims as breach of a contract implied in fact. In determining whether there is a contract implied in fact, the courts look to the acts and conduct of the parties to determine whether the essential elements of an express contract have been established. 6A Michigan Law & Practice, Contracts, § 3, pp 69-70.

Lawrence agreed to follow the directions of the physicians and other medical personnel at the Defendant Clinic for the benefit of her unborn child.

5. That an implied contract in law was created as a result of the Defendant Clinic's offer to provide medical services to Plaintiff Ethel Lutman Lawrence within the then-existing and applicable standard of care and Plaintiff Ethel Lutman Lawrence's acceptance of said offer by agreeing to follow the directions of the Defendant Clinic's physicians and other medical personnel for the benefit of her unborn child.

Plaintiffs allege that Jessica Lawrence is a third-party beneficiary of this contract between her parents and the clinic.

In Count III of the third amended complaint, plaintiffs allege breach of an implied contract between the clinic and the hospital. However, plaintiffs admitted at oral argument on the motion for summary disposition that Count III did not state a claim against defendant clinic and we will therefore not address Count III on appeal.

The lower court found that plaintiffs failed to state a cause of action for breach of contract and granted summary disposition in favor of defendant clinic. Summary disposition on this ground tests the legal basis of the complaint, not whether it can be factually supported, and is proper only when the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover. *Bradford v Michigan,* 153 Mich App 756, 761; 396 NW2d 522 (1986). The trial court concluded that plaintiffs failed to plead facts that would support a finding of adequate consideration and that plaintiffs' contract claim must therefore fail.

Plaintiffs argue that the consideration provided

by plaintiff Ethel Lawrence was her agreement not to have an abortion and her agreement to follow the directions of the clinic medical staff. Plaintiffs contend that, by entering into these agreements, Ethel Lawrence refrained from doing that which she was legally privileged to do and thereby rendered valuable consideration in return for defendant clinic's promise to provide adequate prenatal care. Since plaintiffs have not alleged in their complaint that Ethel Lawrence agreed not to have an abortion in return for the promise of medical care, we will not consider this argument further.[2]

The contract described by plaintiffs involves an exchange of promises: Ethel Lawrence's promise to follow directions in exchange for the clinic's promise to provide appropriate prenatal care. In order for Ethel Lawrence's promise to rise to the level of consideration sufficient to support a contract implied in fact, however, that promise must be of some value to defendant clinic. We think this means the promise must be enforceable. Although we recognize that mutuality of obligation is not always a necessary element to every contract, we are persauded that, in the context of this case, lack of mutuality of obligation translates into lack of consideration:

> Inasmuch as a promise by one person is merely one of the kinds of consideration that will support a promise by another, mutality of obligation is not an essential element in every contract. Therefore, to say the least, language which is susceptible of the interpretation that consideration and mutuality of obligation are two distinct elements lacks precision in that, while consideration is essential,

---

[2] We note, however, that our analysis would be the same on sufficient consideration even if we did address this argument. We are saved from examining the public policy implications of such an anomalous agreement by plaintiffs' complaint.

mutuality of obligation is not, *unless the want of mutuality would leave one party without a valid or available consideration for his promise.* [17 Am Jur 2d, Contracts, § 11, pp 347-348. Emphasis added.]

Plaintiff Ethel Lawrence's agreement to follow the advice of the clinic's medical staff regarding prenatal health care is not a legally enforceable promise. Contrary to the position of plaintiffs below, we are not persuaded that defendant clinic has or had a cause of action for breach of contract against plaintiff for failure on her part to follow its medical advice. Plaintiff Ethel Lawrence was given advice on health care conducive to the well-being of her unborn baby. We hold that her acceptance of that advice cannot be deemed consideration for a contract.

We are well aware that facts giving rise to a cause of action for negligence may also give rise to a cause of action for breach of contract. Where this occurs, the doctrine of governmental immunity bars only the negligence claim and does not prevent the party from pursuing the breach of contract claim based on the same facts. See *Rocco v Dep't of Mental Health,* 420 Mich 567, 647-648; 363 NW2d 641 (1984). As in the instant case, the plaintiff's claim for breach of contract in *Rocco* was dismissed on the basis of inadequate pleadings. That order was reversed. In *Rocco,* however, the plaintiffs expressly alleged that they paid for the care and treatment rendered their decedent. The plaintiffs in *Rocco* did not plead consideration by way of their agreement to follow the defendant's medical advice.

We do not evaluate the adequacy of the consideration allegedly rendered in this case since that would be a question for the factfinder rather than

for us in determining the adequacy of plaintiff's pleadings. We simply conclude that plaintiffs' claim of consideration is so clearly unenforceable as a matter of law that no factual development can possibly justify their right to recover on the theory of defendant's breach of an implied contract in fact.

Affirmed.

M. R. KNOBLOCK, J., concurred.

SAWYER, J. *(dissenting)*. I dissent.

Defendant health clinic made a promise to Ethel Lawrence that if she would come to the clinic and promise thereafter to follow its staff's directions, it would provide her and her unborn child with appropriate prenatal care. Despite these promises, which defendants must admit as true for purposes of the summary disposition motion, the majority concludes that Ethel's promise to follow the clinic's directions had no value to the clinic and, therefore, "is not a legally enforceable promise."

It is not the office of the courts to scrutinize the adequacy of consideration. *Harwood v Randolph Harwood, Inc,* 124 Mich App 137, 142; 333 NW2d 609 (1983). In fact, even the majority concedes in its final paragraph that "the adequacy of the consideration . . . [is] a question for the factfinder . . . " How, then, can the majority now say that Ethel's promise is lacking in value? As I will explain more fully below, I am unable to sign my name to an opinion which on the one hand states that it will let the factfinder worry about the adequacy of consideration and, then, on the other hand holds that plaintiff Ethel Lawrence's consideration "is so clearly unenforceable as a matter of law."

I am unable to join the majority's opinion for

one simple reason: it effectively ignores the fact that this matter comes before this Court by way of an appeal from a grant of summary disposition for failure to state a claim, MCR 2.116(C)(8), rather than from a jury verdict in favor of defendants or even from the grant of summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). While I am skeptical that plaintiffs will be able to prevail at trial, I am unwilling to deny them their day in court.

Summary disposition under MCR 2.116(C)(8) tests the legal basis of the complaint, not whether it can be factually supported, and is proper only when the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover. *Bradford v Michigan,* 153 Mich App 756, 761; 396 NW2d 522 (1986).

Regarding Count II of the complaint, plaintiffs allege that there was an implied contract which defendant health clinic breached.[1] The trial court

---

[1] While plaintiffs allege that there was an implied in law contract, my review of plaintiffs' allegations leads me to believe that any contract was an express contract, with part or all of the terms implied in fact. Plaintiffs' third amended complaint alleges that defendant health clinic offered to provide medical services and plaintiff Ethel Lawrence accepted the "offer by agreeing to follow the directions of the Defendant Clinic's physicians." A contract implied in law

> is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended. To illustrate, if a physician gives a child necessary medical care in the face of parental neglect, the physician may recover from the parents, in quasi contract, the value of his services. . . . The principal function of quasi contract is generally said to be that of prevention of unjust enrichment. [Calamari and Perillo, Contracts (2d ed), § 1—12, pp 19-20 (Footnotes omitted.)]

The concept of an implied in fact contract differs:

> When the parties manifest their agreement by words the

concluded that there could be no contract as there was no consideration on plaintiffs' behalf:

> Looking at the complaint in the light most favorable to the Plaintiff even if Plaintiff were able to sustain her proofs that she had not gotten an abortion and she had followed the directives [of the Health Department's physicians] when she was not obligated by law to do so, the Court does not believe that under any stretch of the imagination could that be considered as adequate or any form of consideration. I think to take that as consideration would expand the definition of the contract beyond all recognition.

The majority seems to follow this view, with which I disagree.

The concept of consideration was discussed in Calamari and Perillo, Contracts (2d ed), § 4—1, pp 133-134:

> Since the doctrine of consideration is an historical phenomenon and therefore in some of its aspects affected by fortuitous circumstances, an encompassing definition is perhaps impossible. Nonetheless, an attempt should be made. A learned

---

contract is said to be express. When it is manifested by conduct it is said to be implied in fact. If A telephones a plumber to come to A's house to fix a broken pipe, it may be inferred that A has agreed to pay the plumber a reasonable fee for his services although nothing is said of this. The contract is partly express and partly implied in fact. There are cases of contracts wholly implied in fact. The distinction between this kind of contract and a contract expressed in words is unimportant: both are true contracts formed by a mutual manifestation of assent. [*Id.,* at 19.]

Inasmuch as plaintiffs allege that there was mutual agreement, I would view this as an express, rather than implied, contract. However, whether this is viewed as an express or implied contract is unnecessary to the resolution of this case. Rather, the question is whether plaintiffs allege the existence of consideration, which is a requirement for both express and implied contracts. *Lowery v Dep't of Corrections,* 146 Mich App 342, 359; 380 NW2d 99 (1985).

judge [Cardozo, C.J., in *Allegheny College v Nat'l Chautauqua Co Bank,* 246 NY 369; 159 NE 173 (1927)] has identified the three elements which must concur before a promise is supported by consideration.

(a) The promisee must suffer legal detriment; that is, do or promise to do what he is not legally obligated to do; or refrain from doing or promise to refrain from doing what he is legally privileged to do.

(b) The detriment must induce the promise. In other words the promisor must have made the promise because he wished to exchange it at least in part for the detriment to be suffered by the promisee.

(c) The promise must induce the detriment. This means in effect, as we have already seen, that the promisee must know of the offer and intend to accept. [Footnotes omitted.]

In this case, plaintiffs argue that the consideration given by Ethel Lawrence was her agreement not to have an abortion and her agreement to follow the directions of the attending physicians.[2] Either of these agreements, if in fact they were made, would constitute a form of consideration. Her agreement not to have an abortion constitutes an agreement to refrain from doing that which she was legally privileged to do.[3] Her agreement to follow the advice of the physicians constitutes an agreement to do that which she was not legally

[2] I recognize that, as pointed out by the majority, plaintiffs did not allege in their complaint that Ethel Lawrence agreed to refrain from undergoing an abortion as part of her agreement. However, plaintiffs did so argue in the trial court. Since plaintiffs could easily have added such an allegation to their complaint by way of amendment, and since amendments to complaints should be freely given, MCR 2.118(A)(2), *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649; 213 NW2d 134 (1973), I believe we can properly consider that argument as part of plaintiffs' claim of consideration. However, I would reach the same result if I considered only plaintiffs' claim of consideration arising from the agreement to follow the physicians' advice.

[3] See *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973).

obligated to do. Assuming that a factual develop-
ment is made to show that Ms. Lawrence's agree-
ments were made to induce defendant health clin-
ic's agreement to provide services and, conversely,
that defendant health clinic required Ms. Law-
rence to make those agreements in order to re-
ceive the health services, then a contract would
exist between the parties.

The flaw in the majority's reasoning is evident
from the following statement:

> Plaintiff Ethel Lawrence's agreement to follow
> the advice of the clinic's medical staff regarding
> prenatal health care is not a legally enforceable
> promise.

The majority, however, offers no authority for this
conclusion. I am aware of no rule of law, be it
statutory, regulatory or common law, which would
operate to prevent a person from contractually
obligating himself to following the advice of a
physician. Since a person is free to do so, upon
contractually binding oneself to following a physi-
cian's advice, that person exposes himself to a
breach of contract action for a subsequent failure
to follow the advice. The majority apparently con-
fuses the unusualness of plaintiffs' theory in appli-
cation with its viability in the abstract. That is,
while I would be surprised to learn that it is
common practice for patients to contractually
agree to be bound by their physicians' advice, I do
not believe such contracts are unenforceable as a
matter of law.[4]

---

[4] In fact, I can imagine situations in which a physician would wish
to contractually bind his patient to take certain actions. For example,
a physician may offer services for free or at a reduced fee in order to
develop a new technique wherein the patient's obediance is essential
to the physician's perfection and evaluation of the technique. While
admittedly an uncommon occurrence, it does point to the flaw in the
majority's broad-sweeping principle.

The same principle applies to plaintiffs' argument concerning the agreement not to have an abortion. While I am aware of no institution which demands such a promise, I can easily imagine that a private health clinic, run by a charitable or religious organization, might well offer free prenatal care as an inducement to prevent women from having an abortion.[5] While such an arrangement would undoubtedly prove difficult for a court to attempt to enforce or to provide a remedy for a breach of such an arrangement, I am unwilling to conclude at this time that such agreements are legally unenforceable.

Once the conclusion is reached that a person may legally bind himself to follow a physician's advice, or to forego an action he is legally privileged to take, it becomes a factual question whether he has made such an agreement. It is improper to resolve that factual question in the context of a motion brought pursuant to MCR 2.116(C)(8) or in an appeal from an order granted under that subrule.

The majority's and the trial court's alternative conclusion, that the consideration, if any, was inadequate is more easily disposed of. It is not ordinarily the role of the courts to question the adequacy of the consideration supporting the contract. Any consideration, no matter how economically insignificant, is sufficient to support a contract. See *Harwood, supra* at 142.[6]

To summarize, I would hold that a person may contractually obligate himself to follow the directions of a physician, or to forego an action he is

---

[5] The question of a governmental agency demanding such a promise from a woman in exchange for services opens a Pandora's box which, fortunately, we have not yet been called upon to open.

[6] However, the adequacy of consideration may be relevant in certain instances, such as to determine the existence of fraud. *Harwood, supra* at 142.

legally privileged to perform. Where such an obligation is given in exchange for the promise of another to perform services, that obligation serves as consideration and a contract is established.

I would stress, however, the fact that this case comes to us by way of a motion for summary disposition for failure to state a claim.[7] I express no opinion as to whether plaintiffs will be able to prove at trial, or even be able to survive a motion for summary disposition for no genuine issue of material fact,[8] that Ms. Lawrence made her agreements in exchange for defendant health department's agreement to provide the health services. If the agreement of one did not induce the agreement of the other, then there is no contract. Similarly, we have not been called upon to consider whether defendant health department has provided consideration. Its only agreement appears to have been to provide health services. If, for example, it was under a preexisting legal duty to provide Ms. Lawrence with the health services, then its agreement to do so cannot constitute consideration. *Lowery v Dep't of Corrections,* 146 Mich App 342, 359; 380 NW2d 99 (1985).

While I recognize that plaintiffs' claim is, at best, novel and, at worst, tenuous, I do not believe that should provide the basis for summarily dismissing the complaint. Plaintiffs' theory is novel and, I suspect, it will prove difficult for them to establish the existence of the alleged promises and that the promise of each party induced the promise of the other. That is, I am not at all convinced that defendant health department required Ethel Lawrence to make the promises she allegedly did in order to receive medical attention. However, the

[7] MCR 2.116(C)(8).

[8] MCR 2.116(C)(10).

point which seems to elude the majority and the trial court is that plaintiffs have not yet been called upon to convince anyone, be it this Court, the trial court, or a jury, that their claim can be borne out by the facts. To date, plaintiffs have only been called upon to state a claim. In my opinion, they have done so.

Judge KELLY once opined that "[a]s in most *trials,* somebody wins and somebody loses."[9] However, the majority today would have plaintiffs lose before they have even had their day in court. To me, that is unconscionable.

I would reverse.[10]

---

[9] *Kovacs v Chesapeake & O R Co,* 134 Mich App 514, 542; 351 NW2d 581 (1984) (emphasis added).

[10] However, I do agree with the majority that summary disposition on Count III of the complaint was appropriate in light of plaintiffs' admission in the trial court that Count III did not state a claim against defendant health department.