WOOD *v.* POTTER.

1. CONTRACTS—CONSIDERATION.
   To render a promise enforceable as a contract it must be founded on some legal consideration.

2. SAME—CONSIDERATION—TEST OF SUFFICIENCY.
   A consideration for a promise is valuable or sufficient in a legal sense either by reason of (1) a benefit to the party promising or, at his request, to a third person, by the act of the promisee; or, (2) because the promisee sustains a detriment at the instance of the promisor although such person obtain no advantage therefrom.

3. SAME—MUTUAL PROMISES.
   Where the contract consists of mutual promises there is an obligation on each party to perform his own promise and to accept performance of the other's promise.

4. SAME—SUFFICIENCY OF CONSIDERATION.
   Consideration is clearly sufficient where there is a benefit to the promisor as well as a detriment to the promisee.

5. SAME—COMPROMISE OF NOTE.
   Trustee of segregated and substituted assets of a bank made a binding contract with three of five obligors on a note secured by security of doubtful value when in consideration of agreement of the three to assume liability of the other two upon the note and pay principal thereof he agreed to forego the accrued interest and such contract bound his successor where original trustee had authority to enter into such a contract.

6. BANKS AND BANKING—SEGREGATED ASSETS—AUTHORITY OF TRUSTEE—COMPROMISE AND SETTLEMENT.
   Under regulation issued by the State banking department for trustees of segregated assets of a closed bank declaring it unnecessary to consult the State banking commissioner prior to effecting settlement of an obligation due the trustee where the reduction to be effected in compromising an obligation was not over $1,000, trustee who had not previously consulted the

commissioner prior to entering into contract whereby accrued interest was forgiven if three of five obligors paid principal of note and assumed obligation of the other two made a binding agreement where amount of such interest was $693, since he had the apparent, if not the actual, authority to enter into such agreement.

7. PRINCIPAL AND AGENT—APPARENT AUTHORITY.

The principal is bound to third persons who have relied on the acts of an agent in good faith and in ignorance of any limitations or restrictions by the apparent authority given to the agent and not by the actual or express authority given where that differs from the apparent, whether the agency be a general or a special one.

8. SAME—APPARENT AUTHORITY—SPECIAL INSTRUCTIONS.

As between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, and the principal will be bound by all acts of the agent performed in the usual and customary mode of doing the particular business, although he may have acted in violation of private instructions, unless there is something in the nature of the business or the circumstances of the case to indicate that the agent is acting under special instructions or limited powers.

9. CONTRACTS—TIME FOR PERFORMANCE.

Negotiation between five obligors on a note which had been given a bank whereby three assumed liability of the other two and effected their release in consideration of agreement of trustee of the segregated assets to accept payment of principal and forego accrued interest if the two were released *held*, to have been carried out within a reasonable time where effected within five months from time contract of settlement was agreed upon, hence was binding upon successor trustees who had not been advised of such compromise.

10. SAME—WAIVER OF TECHNICAL TENDER OF PERFORMANCE.

Successor trustees of segregated assets of a closed bank waived technical tender of performance of contract of settlement as to a note which had been entered into between their predecessor and three of the five obligors thereon where the three had told them that purpose of visit to such successor trustees was to settle for the principal less accrued interest as agreed with their predecessor, and the trustees refused such compromise.

Appeal from Alpena; Reid (Neil E.), J., presiding. Submitted October 18, 1939. (Docket No. 45, Calendar No. 40,698.) Decided December 19, 1939.

Assumpsit by O. S. Wood and John G. Martindale, successor trustees of the segregated and substituted assets of the Alpena Savings Bank, against William A. Potter, Otto Gapske, Herbert A. Kurrasch, Julius Schulke, and Claude B. Freese for sums due as interest on a promissory note. Dismissal as to defendants Gapske and Kurrasch. Directed verdict and judgment for remaining defendants. Plaintiffs appeal. Affirmed.

*Carl R. Henry* and *William F. Knapp,* for plaintiffs.

*Oscar J. Carr* and *A. W. Wilcox,* for defendants.

POTTER, J.   December 6, 1930, William A. Potter, Otto Gapske, Herbert A. Kurrasch, Julius Schulke, and Claude B. Freese borrowed $3,000 from the Alpena Trust & Savings Bank, giving therefor their promissory note due one year after date secured by a mortgage on certain crypts in a mausoleum in Alpena. The note and mortgage were later assigned to the trustees of the segregated and substituted assets of the Alpena Savings Bank. May 19, 1933, E. P. Smith was appointed conservator of the Alpena Trust & Savings Bank. September 6, 1933, he was appointed managing trustee of the segregated and substituted assets of the bank and became president of the newly organized Alpena Savings Bank. $300 was paid on the principal of the note and interest payments were made up to June 6, 1933. January 25, 1937, E. P. Smith notified Potter,

one of the makers, that the note had been past due since December 6, 1931, and insisted on a substantial payment on principal and past due interest to February 6, 1937. April 19, 1937, Potter and Schulke called on Smith for the purpose of telling him to foreclose the mortgage. The parties had an agreement that if defendants could get rid of Kurrasch and Gapske and take over their interest, Smith would settle with them for the balance of the principal due on the note and throw off $693 past due interest. Potter and Schulke then called on Freese, one of the makers, and it was all right with him to begin negotiations with Kurrasch and Gapske.

O. S. Wood was appointed trustee by the commissioner of the State banking department May 17, 1937. He succeeded Smith, June 22, 1937. June 30, 1937, Wood wrote all five makers of the note to see him in relation to the liquidation of the indebtedness. July 15, 1937, Wood wrote Potter, mailing copies to the other defendants, threatening to put the note in the hands of an attorney for collection. Wood was not informed of the agreement with Smith of April 19, 1937. Smith called at Wood's office and obtained the certificates of ownership of the crypts in the mausoleum, which were in blank, but no settlement was made, and September 1, 1937, Wood wrote Potter that unless he heard from him by September 8, 1937, he would turn the matter over for collection.

September 9, 1937, defendants executed the agreement whereby Kurrasch and Gapske released their interest in the crypts to the other defendants. This was one day after the deadline stated in Wood's letter to Potter.

September 22, 1937, Smith advised Wood of his agreement with defendants and suggested that if

Wood did not have authority to carry out this settlement to submit it to the banking commissioner. Wood told Smith the matter was in the hands of an attorney. September 28, 1937, Potter and Schulke called on Wood and offered to pay the principal if Wood would relieve them of the interest, which he refused to do. He refused to recognize the verbal agreement with Smith which they were ready to carry out. No tender was made either by Potter or Schulke at the time of the $2,700 past due, nor did they advise Wood of the execution of the agreement of September 9, 1937. Potter and Schulke called on Smith during the summer of 1937 to report the progress they were making toward a settlement and release from Kurrasch and Gapske. Smith advised he had submitted the proposition to Wood and that it was now up to Wood. June 22, 1937, when his resignation became effective, he told Potter and Schulke he was no longer trustee. Potter testified that when he received Wood's letter of July 15, 1937, he did not consult Wood but saw Smith who told him to pay no attention to Wood's letter. Schulke said he didn't pay any attention to Wood's letters because he was doing business with Smith and Smith told him to pay no attention to them.

October 5, 1937, action was commenced by declaration. October 17, 1938, the trial of the case began. In the previous month of September, the principal amount of $2,700 was paid and the mortgage on the crypts discharged. The sole question relates to the interest.

The trial court denied plaintiffs' motion for summary judgment. The action was dismissed as to Kurrasch and Gapske. At the close of the proofs, both plaintiffs and defendants moved for a directed ver-

dict. The court denied plaintiffs' motion and directed a verdict for defendants. From the judgment entered, plaintiffs appeal.

Plaintiffs contend the court erred (a) in holding the verbal offer of E. P. Smith, managing trustee of the segregated and substituted assets of the bank, made April 19, 1937, to compromise the liability of defendants by canceling the accrued interest, was accepted by the defendants within a reasonable time by the execution of the agreement between the five defendant makers of the note September 9, 1937, or nearly five months after the offer was made; (b) that defendants had a right to rely on the original offer of Smith, trustee; (c) that this offer was binding on Wood, successor trustee, although the successor trustee was not informed of the offer; (d) that the letters written by the successor trustee to defendants to come in for the purpose of arranging liquidation of the indebtedness, and threatening them with a lawsuit unless they complied within the stated time limit, did not amount to withdrawal of the predecessor trustee's offer; (e) that a legal tender was made by the defendants to Wood, trustee; (f) that the agreement of September 9, 1937, was sufficient legal consideration to support the offer of Smith, trustee, to cancel the interest and that it was binding upon the successor trustee; and (g) that the trustee of the segregated and substituted assets of the bank had authority under the rules and regulations governing his powers issued by the commissioner of the State banking department to make the compromise agreement relied upon.

A contract of the kind claimed to have been entered into by defendants with Mr. Smith would not be valid unless based upon a valuable consideration.

"It is not denied that every promise must be founded on some legal consideration. The rule of

law in reference to the sufficiency of the considera-
tion seems to be that it must arise either, first, by
reason of a benefit to the party promising, or, at
his request, to a third person, by the act of the
promisee; or, secondly, on occasion of the latter sus-
taining any loss or inconvenience, or subjecting him-
self to any charge or obligation, at the instance of
the person making the promise, although such per-
son obtain no advantage therefrom: Chitty on Con-
tracts, p. 29. If, in the given case, the consideration
be within either of these branches of the rule, it is
sufficient.'' *Rood* v. *Jones,* 1 Doug. (Mich.) 188.

''A 'valuable consideration,' in a legal sense, may
consist either in some right, interest, profit, or bene-
fit accruing to one party, or some forbearance, loss,
or responsibility given, suffered, or undertaken by
the other.'' *Smith* v. *Maxey,* 186 Mich. 151, 165.

See, also, *Sanford* v. *Huxford,* 32 Mich. 313 (20
Am. Rep. 647); *Steep* v. *Harpham,* 241 Mich. 652;
*Levitz* v. *Capitol Savings & Loan Co.,* 267 Mich. 92.

''Where the contract consists of mutual promises
there is an obligation on each party to perform his
own promise and to accept performance of the
other's promise.'' 7 Halsbury's Laws of England,
p. 331.

''A long series of decisions has established the
rule that a benefit to the promisor or a detriment
to the promisee is sufficient consideration for a con-
tract. Stated with greater elaboration, sufficient
consideration may consist either in some right, in-
terest, profit, or benefit accruing to the one party,
or some forbearance, detriment, loss, or responsi-
bility given, suffered, or undertaken by the other.
Any benefit conferred or agreed to be conferred
upon the promisor by any other person to which the
promisor is not lawfully entitled, or any prejudice
suffered or agreed to be suffered by such person,
other than such as he is at the time of consent law-
fully bound to suffer, as an inducement to the prom-
isor, is a sufficient consideration for the promise.

"Consideration is clearly sufficient where there is a benefit to the promisor as well as a detriment to the promisee." 12 Am. Jur. pp. 570, 571.

"Various definitions of consideration are to be found in the textbooks and judicial opinions. A sufficient one is: A benefit to the party promising, or a loss or detriment to the party to whom the promise is made. 'Benefit' as thus employed, means that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. And 'detriment' means that the promisee has, in return for the promise, forborne some legal right which he otherwise would have been entitled to exercise." 13 C. J. pp. 311, 312.

Smith, managing trustee of the segregated and substituted assets of the bank, held the note in question. The note was secured by certain certificates of ownership of mausoleum crypts in the city of Alpena. These certificates described no specific property and the security was of doubtful value. He desired to realize upon the note in question and to avoid the cost and expense of litigation. He agreed with defendants that if they would assume the liability of Kurrasch and Gapske he would settle with them for the principal amount due and forego the accrued interest. Defendants accepted that offer. They released Kurrasch and Gapske from liability. This release from liability was made with the knowledge and consent of Smith, trustee. Defendants released Kurrasch and Gapske from liability for contribution in case judgment should be collected by execution against them, or either of them. By accepting the proposition of Smith, trustee, and releasing Kurrasch and Gapske from liability, and by paying the amount of the obligation as agreed upon, carrying out and performing the respective

promises made by them to Smith, he, as trustee of the segregated and substituted assets of the bank, became bound to carry out the agreement made with defendants; and plaintiffs, successor trustees, are so bound if Smith had authority or apparent authority to make the contract in the first instance. Smith, as trustee of the segregated and substituted assets of the bank, was, or purported to be, governed by certain rules and regulations issued by the commissioner of banking. These rules and regulations contained the following:

"In the event it is necessary to compromise any debt, such compromise need not be submitted to this office if the reduction in the amount due the trust is 10 per cent. or less, or if the amount of the reduction does not exceed $1,000. Compromises involving the acceptance of reduction of more than 10 per cent. in amount of debt due trust, or reduction in amount due trust of more than $1,000, shall be submitted to this office for approval. In submitting such items, your recommendations shall show full details concerning the financial status of the obligor, giving reasons for the proposed compromise, and shall be accompanied by a favorable recommendation of the trustees. The recommendation of the trustee shall show full details of all compromises and action taken in connection therewith."

The reduction in this case was in the trustee of the segregated and substituted assets of the bank agreeing to forego the collection of the interest accrued upon the obligation. The amount of the reduction did not exceed $1,000 and, under the rules and regulations of the banking department for trustees of the segregated assets of banks, it need not have been submitted to the banking commissioner. It was not so submitted. We think it clear that under these rules and regulations Smith, as trustee of the

segregated and substituted assets of the bank, had the authority to make the compromise. Whether he had such authority by reason of the rules and regulations of the banking department above referred to or not, he represented to the defendants that he had such authority, he assumed and exercised such authority, he was the person in charge of the segregated and substituted assets of the bank, there was nothing to indicate to the defendants Potter, Schulke and Freese when they agreed with him to assume the exclusive liability upon the note in question, to pay the principal thereof, and to release the other makers of the note from liability, that he was acting under special instructions or that there was any limit upon his powers.

*Antrim Iron Co.* v. *Anderson*, 140 Mich. 702 (112 Am. St. Rep. 434), expressly approves the language of Mechem on Agency, § 283, based upon the cases cited, as follows:

"The principal is bound to third persons who have relied thereon in good faith and in ignorance of any limitations or restrictions by the apparent authority he has given to the agent, and not by the actual or express authority where that differs from the apparent; and this, too, whether the agency be a general or a special one."

"As between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, * * * and the principal will be bound by all acts of the agent performed in the usual and customary mode of doing the particular business, although he may have acted in violation of private instructions, unless there is something in the nature of the business or the circumstances of the case to indicate that the agent is acting under special instructions or limited powers." 2 C. J. pp. 570–573, and cases cited.

The undisputed testimony shows that Mr. Potter and Mr. Schulke, defendants, told Smith, within a very short time and as soon as they conferred with Mr. Freese, that they would accept the proposition, and they kept up the negotiations with Smith's approval until finally on September 9, 1937, they completed such negotiations. The undisputed proof shows that such negotiations would have been concluded before had Kurrasch and Gapske been willing to carry out the agreement, but, as said by Mr. Schulke, "When one was willing, the other wasn't; and it took us some time to get the thing through." The undisputed proof shows they obtained the settlement with Kurrasch and Gapske and their approval of the other defendants, carrying out and performing the contract as soon as it was possible under the circumstances *to do* so. This, we think, was within a reasonable time. *Gridley v. Globe Tobacco Co.,* 71 Mich. 528.

When the parties went to Mr. Wood to pay the $2,700, which was subsequently paid to plaintiff's attorneys, they were ready, able and willing to pay it. They had told Smith, who had been trustee, they were ready, able and willing to settle and carry out the contract, but they did not tender the amount to him. Potter testified that later on he called on Wood "who snapped us off before we could offer him anything." Schulke testified he told Wood they were there to settle for $2,700, and Wood said "I won't accept it." Wood, the liquidating trustee, testified, "I refused to consider the acceptance of the principal of the obligation, holding that the men were financially responsible and should not be relieved of that. That it was not necessary to compromise the obligation in order to collect it." We think there was a waiver of a technical tender. *Browning*

v. *Crouse,* 40 Mich. 339; *Range* v. *Davison,* 242 Mich. 73; *O'Toole & Nedeau Co.* v. *Boelkins,* 254 Mich. 44; *Hobart* v. *Vanden Bosch,* 256 Mich. 686.

We find no error in the action of the trial court in directing a verdict for defendants.

Judgment affirmed, with costs.

SHARPE, CHANDLER, NORTH, and MCALLISTER, JJ., concurred with POTTER, J. BUTZEL, C. J., and WIEST and BUSHNELL, JJ., concurred in the result.