20 B.R. 836 (1982)
In the Matter of MAHON INDUSTRIAL CORPORATION, Debtor.
James V. McTEVIA, Trustee, Plaintiff,
v.
PULLMAN, INCORPORATED, a Delaware corporation, Defendant.
Bankruptcy No. 80-01254-W, Adv. No. 81-1635.
United States Bankruptcy Court, E.D. Michigan, S.D.
April 7, 1982.
*837 Peter A. Nathan, Detroit, Mich., for Mahon Indus. Corp.
Gordon A. Becker, Birmingham, Mich., for Pullman, Inc.

MEMORANDUM OPINION AND ORDER
GEORGE E. WOODS, Bankruptcy Judge.
On March 27, 1975, Bridgeport Real Estate, Inc., executed and delivered to Pullman, Incorporated, a promissory note and a real estate mortgage, which was recorded on March 27, 1975, in Liber 1442, page 426, Saginaw County Records. The mortgaged property consisted of a parcel of land improved with an industrial building. Inside the buildings were approximately 23 overhead cranes which are situated upon rails which are attached to the building.
On January 1, 1977, Mahon Industrial Corporation, debtor herein, entered into a two year lease on the property. During the pendency of that lease, the debtor, Pullman, Bridgeport Real Estate and the Frimbergers entered into a settlement agreement wherein the debtor and Bridgeport acknowledge that the overhead cranes were *838 fixtures and were subject to the security interest of Swindell (Pullman) pursuant to its real estate mortgage.
Mahon's lease expired and thereafter the debtor remained as a tenant on the property on a month to month basis. On February 13, 1980, a bankruptcy proceeding was commenced as to Mahon.
There was a default and Pullman foreclosed its mortgage against Bridgeport and subsequently purchased the property at a foreclosure sale held on July 17, 1981 for the sum of $2,000,000.00. A sheriff's deed was executed and delivered to Pullman at the sale and recorded July 30, 1981 in Liber 1602, page 1455, Saginaw County Records. The redemption period on the property expired January 17, 1982 with no redemption having been made and, therefore, Pullman is the holder of the fee simple title of the real estate.
On July 28, 1981, in an adversary proceeding in this Court between Mahon and Pullman, a judgment was entered in which the Court found that Mahon had no equity in the real property involved in this action.
On August 12, 1981, this Court issued an order pursuant to an application therefor, authorizing the sale of debtor's personal property. On September 29, 1981, Pullman's counsel sent to counsel for Mahon, a letter in which Pullman claimed the cranes were fixtures. The sale of debtor's property was scheduled for October 15 and 16, 1981, and was carried through. The cranes in question were sold at the sale. Counsel for Pullman never received notice of the sale.
The hearing on confirmation of the sale was held on October 19, 1981. Counsel for Mahon was present. Counsel for Pullman was not. Mr. Frimberger of Bridgeport Realty was present and objected to the sale of the cranes. Mr. Frimberger was not represented by counsel but informed the Court that he believed that Mahon did not own the cranes, and that he had stated as much to the trustee at the time of the sale. At the time of sale the trustee contacted the office of Mahon's counsel and was directed to proceed with the sale. The Court determined that as between Bridgeport and Mahon, Mahon was the owner of the cranes. Mr. Frimberger, without aid of counsel, could not prove the cranes were not owned by Mahon.
On October 19, 1981, the sale was confirmed. As of that date five cranes had been removed from the realty and delivered to the purchasers at the sale. As of the date of trial, 18 overhead bridge cranes are still physically present on the real estate. Of those 18 cranes, 17 are located in the main industrial building on the real estate. The remaining crane is in another building situated on the property.
The first issue which must be decided is the effect of the hearing on the confirmation of sale of October 19, 1981. During the hearing, Judge Patton determined that, as to Bridgeport, Mahon owned the cranes in question. That determination is not binding upon Pullman unless Pullman was a party to the proceedings or in privity with Bridgeport. 46 Am.Jur.2d § 518, p. 669.
Pullman was not made a party to the proceedings of October 19, 1981. It did not receive notice of the proceedings although it is apparent that counsel for Mahon knew that Pullman might be an interested party. Pullman might have been bound if it was a "privy" to Bridgeport or any of the parties in the proceedings. A privy is one who, after the commencement of the action, has acquired an interest in the subject matter affected by the judgment. 46 Am.Jur.2d § 532, p. 684. Bridgeport had no interest, except that of a redemption right, in the real estate nor in the cranes at the time of the confirmation of sale. Pullman acquired its interest in 1975 when it executed its mortgage, long before the commencement of the bankruptcy. Pullman was not a party or privy to any of the proceedings or actions. Pullman may be bound by the determination of ownership as between Bridgeport and Mahon but in this, a separate and distinct adversary action, Pullman has a right to have this Court determine which of these parties, Mahon or Pullman, has a superior claim to the cranes.
*839 The plaintiff concedes that if this Court determines the cranes to be fixtures, then the cranes belong to Pullman since they are covered under Pullman's mortgage. This Court will, therefore, determine whether the cranes are fixtures since it appears the most expeditious and practical solution to this controversy.
The term "fixture" necessarily implies something having a possible existence apart from the realty but which may, by annexation, be assimilated in the realty. Whether the article retains the character of a chattel fixture or loses such and becomes part of the real estate depends upon the application of principles of law to particular facts. Kent Storage Company v. Grand Rapids Lumber Company, 239 Mich. 161, 214 N.W. 111 (1927). The Michigan Supreme Court has consistently held that three tests must be applied in determining whether an article is a fixture. First, there must be an annexation to the real estate, either actual or constructive; second, adaptation or application to the use of or purpose to which that part of realty is devoted; and third, an intention to make the article a permanent accession to the freehold. Peninsular Stove Company v. Young, 247 Mich. 580, 226 N.W. 225 (1929); First Mortgage Bond Company v. London, 259 Mich. 688, 244 N.W. 203 (1932); Sequist v. Fabiano, 274 Mich. 643, 265 N.W. 488 (1936).
When applying these tests, consideration must be given to the nature of the structure and the use to be made of it. Peninsular Stove Co., supra. Additionally, whatever is attached to a building by an owner, in complement, to facilitate its use and occupation in general, becomes part of the realty, though capable of removal without injury to the building. Kent Storage Co., supra. This attachment by the owner raises a presumption under Michigan law that the accession is to be permanent. Petition of Johns Manville Sales Corporation, 88 F.2d 520 (C.A. 6th Cir. 1937).
The parties agree that the rails upon which the cranes traverse are attached to the building. Mahon contends that the cranes themselves are not annexed and therefore they cannot be fixtures. Pullman would urge this Court to find the cranes actually or constructively annexed to the building.
This Court is satisfied that the cranes are constructively annexed to the real estate. There are numerous cases wherein articles have been attached to fixtures incorporated in buildings. These articles were easily and inexpensively removable from the real estate but were found to be fixtures. (See Johns Manville Corp., supra; Peninsular Stove Co., supra; First Mortgage Bond Co., supra.) In the instant case, the cranes are resting upon or attached to the railings which in turn are connected to the building. The plaintiff does not contest the fixture character of the rails upon which the cranes traverse. The value of the rails is considerably lessened without the cranes. In light of the above decisions, this Court does not agree that simply because the cranes are not actually attached to the real estate but instead ride upon or are attached to rails, that they are not constructively attached to the real estate. In all of the cases cited above, the articles themselves were removable but were attached to something which was indeed a fixture. The courts considering those cases all found constructive annexation. Further, an inherent characteristic of any fixture is that it can exist separately from the thing to which it is attached. Simply because the cranes are easily removable and, possibly, can be used elsewhere does not mean they cannot be constructively attached to the real estate.
Having found the cranes to be constructively attached to the real estate involved herein, the Court must consider whether there is an adaptation or application of the article to the use of or purpose to which that part of the realty is devoted. This involves an examination of the nature of the structure. Mahon contends that the cranes had no peculiar adaptation to its business or any other tenant's business because the cranes could be used virtually anywhere. The test, however, requires the Court to look at the nature of the structure and the adaptation of the article to that *840 structure, not the business of the plaintiff or previous tenants.
The real estate subject to Pullman's mortgage consists of approximately 75 acres improved with three industrial buildings. The main building contains approximately 127,000 square feet of space divided between the plant, office and engineering spaces. Since 1975 and before, the plant space of the main building containing the cranes was used and adapted for industrial and manufacturing purposes. There is no indication that the building or the cranes were used or could be used in a different capacity. Nor is there any indication that the space could be used in another capacity. Further, the history of this real estate indicates the cranes were present from the day Mr. Frimberger installed them and that the cranes were conveyed with the real estate each time the property was conveyed or leased. Specifically, each successive owner or tenant used the cranes and the building alike and as one integrated unit for manufacturing purposes. Without the cranes, the use of the building for those purposes would be considerably lessened.
The final test requires an intention by the parties to make the article a permanent accession to the real estate. As noted above, the presumption in Michigan is that whatever is attached to a building by the owner, in complement, to facilitate its use and occupation becomes part of the realty though capable of removal. In the instant case, four of the cranes were purchased with the real estate by John Frimberger in 1964. Between 1964 and 1967, a tenant of the property, Frimberger Corporation, installed additional cranes. Thereafter, Frimberger purchased the additional installed cranes thereby effecting unity of title with the land and the cranes. In 1971, Frimberger sold the real estate which included the cranes to Bridgeport Real Estate Corporation. In 1975, Bridgeport mortgaged the property to Pullman. That mortgage provides in part:
". . . together with all and singular the buildings, hereditaments, appurtenances, privileges, rights and water rights, including (but not excluding any other fixtures which would ordinarily be construed as part of the realty) . . . belonging to or used as a part of the building or buildings upon said premises at the time of the execution of this mortgage, or hereafter executed thereon, or which may be attached to said building or buildings or used as a part thereof at any time during the term of this mortgage, all of which are hereby deemed to be a part of this realty and secured by this mortgage . . . "
It appears that, at the time of the mortgage, the parties intended the cranes to be treated as fixtures. The history of the real estate would indicate this intent.
There can be no question that the cranes were placed to facilitate the use and occupation of the building. Without the cranes the value of the building as a manufacturing and industrial piece of property is, as noted, considerably lessened since any successor purchaser would be required to install cranes to carry on manufacturing processes. The cranes, in all likelihood, attracted lessees since those lessees would not be required to put forth capital for the purchase and installation of other cranes. In this way the cranes facilitated the use and occupation of the building. In light of the above, it can be stated that the cranes were "belonging to or used as a part of the building" at the time of the execution of the mortgage and are covered under said mortgage. The intent to make these articles fixtures is present. Even without the mortgage or any of the other indicia or an intention to treat the articles as fixtures present, as shown below, there is an agreement wherein the parties concurred in the opinion that the cranes were fixtures.
The Agreement signed by Mahon, Bridgeport and Pullman in 1978 indicates the parties agreed that the cranes were fixtures. Paragraph 3(g) of the Agreement reads:
"Mahon and Bridgeport acknowledge that the overhead cranes (including but not limited to those listed in the attached Exhibit C) present on the said real estate are fixtures, and are subject to the security *841 interest of Swindell pursuant to its real estate mortgage, and not subject to Exhibit B."
Mahon argues that the Agreement is not binding upon it because it was without consideration and because it is a self-serving declaration not reflective of a present intent to make the cranes a permanent accession. The cases reviewed by this Court do not require a present intention, at the time the articles are installed, to make the articles a permanent accession. The test merely requires an intent. This intent is present in the case at bar as reflected in the 1978 Agreement. If the cranes were not fixtures prior to this Agreement because the intent to make them a permanent accession was lacking, then clearly after this Agreement they became fixtures. The intent to treat the cranes as fixtures is clear and unambiguously reflected in the Agreement.
The argument that the Agreement is not binding on counsel for lack of consideration is without merit since a review of the Agreement will show that Pullman was compelled to perform certain duties for the benefit of Mahon under the Agreement.
Mahon further attacks the 1978 Agreement by arguing it is a security agreement purporting to include the cranes as additional collateral and that since said Agreement was not recorded, an interest created by the Agreement is unperfected as to the trustee in bankruptcy. This Court has already determined the cranes to be fixtures.
M.C.L.A. § 440.9313(5) provides in part:
"A security interest in fixtures, whether or not perfected, has priority over the conflicting interest of an encumbrancer or owner of the real estate where;
(a) the encumbrancer or owner has consented in writing to the security interest or has disclaimed an interest in the goods as fixtures . . . "
In the case at bar, Bridgeport, the owner, consented in writing to the security interest, thereby disclaiming an interest in the cranes as fixtures. As between Pullman and Bridgeport, therefore, the security interest was valid even though unperfected. Pullman foreclosed on its mortgage and, since it already had a security interest in the cranes, it took the realty and the cranes. Therefore, the fact that Pullman's security interest is unperfected, assuming the Agreement can indeed be classified as a security agreement, is irrelevant since the statute provides that an owner or encumbrancer may disclaim an interest in goods as fixtures by giving an agreement to another party which, although unperfected, is still enforceable. This Agreement is valid and enforceable against Mahon. Mahon was a mere lessee of the premises and has presented no evidence by which it claims ownership of the cranes except for the supposed finding of fact of Judge Patton that, as to Bridgeport, Mahon owned the cranes. The record of the confirmation of sale hearing does not reflect the basis of Judge Patton's ruling. Suffice it to say that the Court was concerned about the effects of overturning the sale when such a large number of purchasers were involved. This was a prime factor for the Court's decision as to ownership of the cranes. Further, the affidavit of Robert Williams purported to show that Mahon had an interest in the cranes is insufficient because the affidavit was not made upon the personal knowledge of Robert Williams, and it was not submitted to Pullman prior to the hearing on the motion as required by F.R.C.P. 56.
This Court finds the cranes to be fixtures and are thereby covered by Pullman's mortgage. This Court further finds the 1978 Agreement to be binding upon Mahon as both an indicia of an intent to treat the cranes as fixtures and as a security agreement as between Bridgeport and Pullman, which under Michigan law is valid and enforceable. The motion for summary judgment is granted.
So ordered.