In the Matter of CLIFF'S RIDGE SKIING CORPORATION, d/b/a Marquette Mountain, Debtor.

Bankruptcy No. GM 87–00206.

United States Bankruptcy Court, W.D. Michigan.

Feb. 5, 1991.

James R. Jessup, Marquette, Mich., for First Nat. Bank & Trust Co. of Marquette.

W. Scott Chilman, Ishpeming, Mich., for Cliff's Ridge Development Co.

Robert D. Mollhagen, Lansing, Mich., for First of America Bank—Marquette, N.A.

## OPINION RESOLVING ENTITLEMENT TO CHAIRLIFT SALE PROCEEDS

JAMES D. GREGG, Bankruptcy Judge.

### INTRODUCTION

In this contested matter, three creditors are fighting over sale proceeds from a ski chairlift. Although the parties have attempted to settle this matter, this has not been possible. The Court will therefore grapple with the issues and render a decision.

The issues presented are many. Was the chairlift a fixture? Which creditor has, or creditors have, a valid and perfected mortgage interest or security interest in the chairlift and the proceeds? Does one of the creditors have a perfected purchase money security interest in the chairlift and the proceeds? What is the priority of the creditors' respective interests? Did one creditor validly subordinate its interest to another creditor? Is there a circular priority problem? If so, how should it be resolved?

### PROCEDURAL BACKGROUND

On October 28, 1987, Cliff's Ridge Skiing Corporation, ("Debtor"), filed for relief under chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101–1330. On January 4, 1988, the case was converted to a chapter 7 case. The Debtor's assets were sold, after notice and hearing, pursuant to a court order dated July 28, 1988. The sale proceeds were distributed to secured creditors, or retained by the estate, pursuant to a court order dated December 27, 1988. One of the assets sold was a Riblet chairlift–2 place, No. 6470, 75 HP electric drive ("chairlift"). The sale proceeds received from the chairlift were $22,500.00. These proceeds were placed in an interest-bearing escrow account pending a court determination as to creditors' entitlement to the proceeds.

Three creditors, First National Bank & Trust Company of Marquette ("First National"), Cliffs Ridge Development Co. ("Cliff's Ridge Dev."), and First of America Bank–Marquette, N.A., formerly known as Union National Bank & Trust Company of Marquette ("FOA"), each assert they are legally entitled to the escrowed proceeds and the interest earned therefrom. The chapter 7 trustee received notice of this proceeding. The trustee's counsel has informed the parties and the court that the bankruptcy estate now makes no claim to the chairlift proceeds.

Although this matter should have been commenced as an adversary proceeding pursuant to Bankruptcy Rule 7001(1) and (2), relief was sought by a motion filed by First National. The parties consented to utilize a contested matter procedure under Bankruptcy Rule 9014 to achieve a resolution of their dispute. In accordance with Bankruptcy Rule 9014, in its Pretrial Order, the court mandated that all rules in Part VII of the Bankruptcy Rules are applicable to this proceeding.

All parties have agreed, and the court concludes, that jurisdiction exists pursuant to 28 U.S.C. § 1334. The parties have agreed that this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(K), (N), and (O). In the event this adversary proceeding may not be a core proceeding, the parties have agreed the court may enter a final order, subject to their respective rights of appeal, in accordance with 28 U.S.C. § 157(c)(2).

At the hearing which took place on July 27, 1989, in Marquette, Michigan, the parties submitted a Stipulated Statement of Facts. The parties also stipulated that pages 1–28 of a deposition of Paul Walker Brown ("Brown"), taken on July 10, 1989, be admitted into evidence. The parties also stipulated that certain exhibits should be considered by the court; those exhibits have been marked and admitted into evidence as Exhibits A–D and F–GG.

This opinion shall constitute the court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052. Because some of the issues presented may involve mixed questions of fact and law, any finding that should properly be con-

sidered as a conclusion and any conclusion that should properly be considered as a finding shall be so construed.

## FACTS

On July 24, 1980, FOA loaned Cliff's Ridge Dev. the sum of $300,000 pursuant to a note. (Exh. A.) Repayment of this indebtedness was secured by Cliff's Ridge Dev. executing a mortgage and a security agreement each dated July 24, 1980. (Exhs. B and C.) The mortgage was properly perfected by recordation with the Marquette County Register of Deeds on August 1, 1980. The mortgage language granted FOA an interest in certain real property owned by Cliff's Ridge Dev. together with "all improvements now or hereafter created on the property ... and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this mortgage." The security interest which granted FOA an interest in all tangible and intangible personal property of Cliff's Ridge Dev. was perfected by the filing of a financing statement with the State of Michigan, Secretary of State, U.C.C. Division, on July 29, 1980. No fixture filing was made with the Marquette County Register of Deeds.

The indebtedness owed to FOA, which is secured by its mortgage, has not been fully satisfied. FOA is now owed an amount which is greater than the escrowed chairlift proceeds and the interest earned therefrom. (Stipulated Statement of Facts, ¶ 2.)

During summer or early fall of 1981, Cliff's Ridge Dev. entered into discussions with Brown, a prospective purchaser, regarding a sale of all of Cliff's Ridge Dev.'s assets. A Preliminary Sales Agreement was properly and validly executed by Brown and Cliff's Ridge Dev. in November, 1981. (Exh. F; Brown Deposition, p. 6; Stipulated Statement of Facts, ¶ 7.) All rights and duties pursuant to this agreement were subsequently assigned to the Debtor. (Stipulated Statement of Facts, ¶ 7.) After execution of the sales agreement, but before closing of the sale, the Debtor operated the ski hill with the cooperation of a principal of Cliff's Ridge Dev. (Brown Deposition, p. 6.) On February 4, 1982, the Debtor assumed Cliff's Ridge Dev.'s obligations owed to FOA. (Exh. GG.)

The Debtor determined it was advisable to purchase an additional chairlift and the purchase was discussed with a principal of Cliff's Ridge Dev. (Brown Deposition, p. 7.) In April or May, 1982, the Debtor contacted Breckenridge Ski Area to purchase the chairlift on a cash-on-delivery basis. (Stipulated Statement of Facts, ¶ 12.) The price paid for the chairlift by the Debtor was $65,000. In addition, the Debtor paid $10,000 for shipping, $7,500 for engineering, and approximately $80,000 for erection of the chairlift. The Debtor paid the shipping and engineering costs at, or shortly after, the time they were incurred. (Stipulated Statement of Facts, ¶ 16.) The parties agree the other terms of the sale are not now known; no sale documents were introduced into evidence.

The chairlift was delivered in August, 1982. The erection of the towers for the chairlift commenced in September, 1982, with the concrete pads having been poured prior to the erection. The erection of the towers was completed by November 15, 1982. The cable was strung during the latter part of November, 1982 and was spliced on December 2, 1982. The chairlift was tested with the chairs in place on December 7, 1982. The State of Michigan certified the chairlift for operation on December 23, 1982. (Stipulated Statement of Facts, ¶ 11.) The chairlift was specially engineered and modified for a slope on the ski hill real property. Although the chairlift is attached to the real property, it can be severed from the real property, removed and sold. (Stipulated Statement of Facts, ¶ 16.)

After delivery of the chairlift, and sometime during the erection of the chairlift, the Debtor sought financing from the Economic Development Corporation of the County of Marquette ("EDC"). On or about September 10, 1982, the Debtor submitted its Project Plan to the EDC. (Exh. G.) The

Project Plan stated that the Debtor intended to (1) purchase Cliff's Ridge Dev.'s real property, (2) expand the ski hill by constructing the chairlift, (3) finance the project through the issuance of revenue notes in the total amount of up to $175,000, (4) obtain financing from First National, and (5) secure repayment by granting a security interest in the chairlift improvement. Local government entities each considered the request that the Debtor's Project Plan be approved at various meetings or hearings. (Exhs. H, I, J, K, L, M, N, O, P, Q, and R.) At an EDC meeting on November 22, 1982, the Debtor's Project Plan was approved and the EDC representatives were authorized to sign the loan documents. (Exh. S.) No evidence exists at this time that Cliff's Ridge Dev. had any actual knowledge of the Debtor's request to have its Project Plan approved by the EDC. (Stipulated Statement of Facts, ¶ 9.) Based upon the record, the court finds that Cliff's Ridge Dev. also lacked any implied knowledge on the Debtor's Project Plan.

On November 22, 1982, Cliff's Ridge Dev. conveyed its ski hill real property to the Debtor pursuant to a warranty deed. (Exh. F.) The deed given to the Debtor was subject to the prior mortgage granted by Cliff's Ridge Dev. to FOA dated July 24, 1980. (Stipulated Statement of Facts, ¶ 6.) Also on November 22, 1982, the Debtor granted Cliff's Ridge Dev. a mortgage respecting the ski hill real property. The mortgage was properly perfected by recordation with the Marquette County Register of Deeds on November 23, 1982. The mortgage states it is "a second mortgage, the prior mortgage of [FOA] for the SBA debt described in said preliminary sales agreement, this mortgage being specifically subordinate to said mortgage". The mortgage does not contain any express language granting Cliff's Ridge Dev. an interest in the Debtor's fixtures, whether then owned or after acquired. Rather, the mortgage only grants an interest in the conveyed real property together "with the hereditaments and appurtenances thereunto belonging or in anywise appertaining." (Exh. F.)

The indebtedness owed to Cliff's Ridge Dev. which is secured by its mortgage, has not been fully satisfied. Cliff's Ridge Dev. is now owed an amount which is greater than the escrowed chairlift proceeds and the interest earned therefrom. (Stipulated Statement of Facts, ¶ 2.)

On December 13, 1982, the Debtor, the EDC and First National executed a Loan Agreement. In that agreement the Debtor guaranteed "all of the duties, obligations, undertakings and liabilities" of the EDC under the agreement. (Exh. T.) The Loan Agreement provides, *inter alia,* that (1) First National will loan $175,000 to the EDC to be used to purchase the chairlift, (2) First National will receive a perfected security interest in the chairlift, (3) the note evidencing the loan will be a nonrecourse note with respect to the EDC but a recourse obligation with respect to the Debtor, and (4) as a condition precedent to the loan, FOA will subordinate any security interest it might claim with respect to the chairlift collateral to First National. The agreement also includes a representation that the Debtor has, or will obtain, good and marketable title to the chairlift except for liens disclosed to First National. At the time of this Loan Agreement, the parties apparently failed to recognize that Cliff's Ridge Dev. might claim an interest in the chairlift pursuant to its prior mortgage.

Although the loan transaction closing was to have been concluded on an earlier date, the loan transaction was consummated on December 13, 1982 in accordance with the Loan Agreement and other documents executed by the parties thereto. (Stipulated Statement of Facts, ¶ 11.) The EDC executed and gave First National a Limited Obligation Economic Development Revenue Note in the amount of $175,000. (Exh. U.) The Debtor executed a Security Agreement which granted the EDC an interest in the chairlift. (Exh. V.) The EDC executed and gave First National an Assignment of Security Agreement. (Exh. W.) Two principals of the Debtor, and their respective spouses, each executed and gave First National a Guaranty Agreement which guaranteed payment of the Debtor's

loan obligation. (Exh. W.) Also on December 13, 1982, the EDC, First National, FOA and the Debtor entered into a Subordination Agreement. (Exh. X.) That agreement states in pertinent part:

[I]n consideration of the premises and to induce [First National] and the EDC to accept a security agreement and note and also in consideration of $1.00 paid to [FOA], the receipt whereof is hereby acknowledged, [FOA] agrees with [First National] and EDC that a security agreement to be held by EDC and [First National] and covering [the chairlift] shall be prior to and superior to any claims of [FOA] with respect to [the chairlift], and [FOA] does hereby subordinate its security interest in [the chairlift] to the interest of [First National] and the EDC as their interest may appear.

Cliff's Ridge Dev. was not a party to the Subordination Agreement and there is no evidence that Cliff's Ridge Dev. knew of this agreement prior to, or at the time, the agreement was executed. At the time the EDC loan documents were executed, the Debtor had a legal right or interest in the chairlift. (Stipulated Statement of Facts, ¶ 11.) The Debtor executed, and First National and the EDC filed, three financing statements regarding First National's assigned security interest in the chairlift collateral.

First, on December 14, 1982, a financing statement, intended as a fixture filing, was filed where mortgages are recorded with the Marquette County Register of Deeds. (Exh. CC.) The EDC is listed as the secured party and First National is shown as the assignee. The real property description is attached to the financing statement. The financing statement states, "The goods are to become fixtures on 11/24/82". On November 5, 1987, a continuation statement was filed with the Marquette County Register of Deeds. (Exh. DD.)

Second, on December 15, 1982, a financing statement, intended as a fixture filing, was filed with the Michigan Secretary of State, Uniform Commercial Code Section. (Exh. Z.) This financing statement was identical to that filed with the Marquette County Register of Deeds and again stated the "goods are to become fixtures on 11/24/82". On November 12, 1987, a continuation statement was filed with the Secretary of State. (Exh. BB.)

Third, on December 15, 1982, a financing statement, designated as a "Non–Fixture Statement", was filed with the Michigan Secretary of State, Uniform Commercial Code Section. (Exh. Y.) The chairlift is identified on the financing statement. On November 12, 1987, a continuation statement was filed with the Secretary of State. (Exh. AA.)

Cliff's Ridge Dev. did not consent in writing to First National's security interest or otherwise disclaim an interest in the chairlift as a fixture. The Debtor did not have the right to remove the chairlift as to Cliff's Ridge Dev. (Stipulated Statement of Facts, ¶ 7.)

Pursuant to the loan transaction, proceeds were disbursed to the Debtor on December 17, 1982 in the amount of $100,000. (Exh. EE.) On December 23, 1982, another disbursement was made to the Debtor in an amount which appears to be $49,864.39. (Exh. FF; this exhibit is somewhat illegible and the amount of this loan disbursement is uncertain.) No evidence or stipulated fact discloses whether the remaining loan proceeds were ever disbursed to the Debtor. The indebtedness now owed to First National, secured by the security interest respecting the chairlift, exceeds the value of the escrowed chairlift proceeds and the interest earned therefrom. (Stipulated Statement of Facts, ¶ 2.)

## DISCUSSION

### Is the Chairlift a Fixture?

Mich.Comp.Laws Ann. § 440.9313(1)(a) states: "Goods are 'fixtures' when they become so related to particular real estate that an interest in them arises under real estate law." Uniform Commercial Code § 9–313(1)(a) is "unhelpful" and "it is merely an invitation to read the real estate statutes and the local case law on what is and what is not a fixture." White & Sum-

mers, *Uniform Commercial Code* 1153 (3rd ed. 1988).

■ In Michigan, whether personal property becomes a fixture and thereby part of realty is determined by a three-part test: (1) is the property annexed or attached to the realty, (2) is the attached property adapted or applied to the use of the realty, and (3) is it intended that the property will be permanently attached to the realty? *Colton v. Michigan Lafayette Bldg. Co.*, 267 Mich. 122, 126, 255 N.W. 433, 434 (1934); *First Mortgage Bond Co. v. London*, 259 Mich. 688, 691, 244 N.W. 203, 204 (1932); *Peninsular Stove Co. v. Young*, 247 Mich. 580, 582, 226 N.W. 225, 226 (1929); *Morris v. Alexander*, 208 Mich. 387, 390–391, 175 N.W. 264, 265 (1919). The three-part test remains valid under current Michigan law. *Velmer v. Baraga Area Schools*, 430 Mich. 385, 394, 424 N.W.2d 770, 774 (1988) (addressing whether a milling machine not bolted to the floor may constitute a fixture and a dangerous condition of a building within the public building exception to governmental immunity).

■ In this case, FOA and Cliff's Ridge Dev. each assert the chairlift is a fixture, was annexed to the realty, and is therefore subject to their respective prior recorded mortgages. FOA and Cliff's Ridge Dev. each implicitly assert that the three-part test has been satisfied. First National does not seriously dispute that the chairlift is a fixture. However, First National has not stipulated to such a determination. This court must therefore determine whether the chairlift is a fixture.

The chairlift was attached to the realty. Concrete pads were poured in the realty prior to the erection of the chairlift. Towers were then bolted to the concrete pads, cables were strung, and about 100 chairs were attached to the cables. (Brown Deposition, pp. 19–20; Stipulated Statement of Facts, ¶ 11.) The parties have stipulated

that "chairlifts are part of ski hills but can be severed from the ski hills and sold." (Stipulated Statement of Facts, ¶ 16.) The court finds the chairlift was annexed or attached to the real property.

The parties have stipulated that the chairlift was engineered to be erected on the realty and the chairlift was specially modified to be attached to the realty. (Stipulated Statement of Facts, ¶ 16.) The court finds the chairlift was adapted to the ski hill real property for its use and purposes.

■ Very little testimony exists whether the parties intended to permanently affix the chairlift to the real estate. (Brown Deposition, pp. 25–28.) In the Project Plan, and other documents relating to the Debtor's request to obtain EDC financing, it is stated that the loan was intended to finance "construction" and "installation" of the chairlift "improvements" to the realty. (Exhs. G, I, J, K, Q and R.) Final approval of the requested financing was conditioned upon conveyance of the realty from Cliff's Ridge Dev. to the Debtor. (Exh. H.) In two financing statements dated December 14 and December 15, 1982, filed by First National, it is stated, "The goods are to become fixtures on 11–24–82." (Exhs. Z and CC.) No other evidence regarding intent has been introduced by any party. Under Michigan law, attachments to realty to facilitate its use become part of the realty and, if done by the owner, are presumed to be permanent. *McTevia v. Pullman, Inc. (In the Matter of Mahon Industrial Corp.)*, 20 B.R. 836, 839–40 (Bankr.E. D.Mich.1982). Based upon the preponderance of the evidence, the court finds the Debtor intended to permanently affix the chairlift to the realty.[1]

Under governing Michigan law, all requirements of the three-part test to determine whether personal property has become a fixture have been met. The court

---

1. In making this finding, the court is cognizant of Official Comment 1 to U.C.C. § 9–313 which states:

Since the determination in advance of judicial decision of the question whether goods have

become fixtures is a difficult one, no inference may be drawn from a fixture filing that the secured party concedes that the goods are or will become fixtures. The fixture filing may be merely precautionary.

concludes that the chairlift in dispute is a fixture.

*Creation and Perfection of an Interest in Fixtures.*

■ Under Michigan law, there are two methods by which a creditor may create and perfect an interest in fixtures. A creditor may utilize procedures under Michigan real estate law. Alternatively, a creditor may take a security interest in a fixture and perfect that interest under the Uniform Commercial Code as adopted in Michigan ("U.C.C.").

Article 9 of the U.C.C. allows the creation of an interest in fixtures pursuant to state real estate law.[2] Prior to adoption of the U.C.C., Michigan law was well-settled that once a fixture is annexed or attached to realty, the fixture became part of the realty and title to the fixture is subject to a real estate mortgage. *See, e.g., Wilson v. Union Guardian Trust Co. (Petition of Johns–Manville Sales Corp.),* 88 F.2d 520 (6th Cir.1937) (chattels annexed to realty became permanent fixtures and part of the realty covered by a mortgage); *Whitaker–Glessner Co. v. Ohio Savings Bank & Trust Co.,* 22 F.2d 773 (6th Cir.1927) (machinery attached to realty held to be a fixture covered by mortgage); *Wood Hydraulic Hoist & Body Co. v. Norton,* 269 Mich. 341, 257 N.W. 836 (1934) (equipment was a fixture and component part of building; it was included in mortgage security); *Studley v. Ann Arbor Savings Bank,* 112 Mich. 181, 70 N.W. 426 (1897) (machinery attached permanently to realty will be treated as fixtures covered by mortgage).

■ As stated in *Kent Storage Co. v. Grand Rapids Lumber Co.,* 239 Mich. 161, 164–165, 214 N.W. 111, 112–113 (1927): "It is a salutary rule that whatever is affixed to a building by an owner in complement, to facilitate its use and occupation in general, becomes a part of the realty, though capable of removal without injury to the building." *Accord, Wood Hydraulic Hoist & Body Co. v. Norton,* 269 Mich. at 346, 257 N.W. 836. When a fixture becomes complemental to real property, it becomes a permanent accession and becomes part of the realty; the fixture becomes part of the security with regard to any existing mortgage. *Sequist v. Fabiano,* 274 Mich. 643, 646 265 N.W. 488, 489 (1936). A mortgage covers fixtures even when they are not expressly mentioned in the mortgage. *Tyler v. Hayward,* 235 Mich. 674, 676, 209 N.W. 801, 802 (1926) (equipment installed on realty became fixtures and held to be covered by subsequent deed or mortgage without special mention in the conveyance).

Once a mortgage creates an interest in fixtures under Michigan real estate law, the interest must be perfected. Perfection under state real estate law is accomplished by recordation of the mortgage in the county where the real property is located. Mich.Comp.Laws Ann. §§ 440.9401(1)(b); 53.145; 565.1; 565.23.

The second method by which a security interest in fixtures may be created and perfected is under the U.C.C. without reference to state real estate law. A "security interest" is defined very broadly to mean "an interest in personal property or *fixtures* which secures repayment of an obligation." Mich.Comp.Laws Ann. § 440.1201(37) (emphasis supplied.) Article 9 of the U.C.C. applies "[t]o any transaction (regardless of its form) which is intended to create a security interest in personal property or *fixtures....*" Mich. Comp.Laws Ann. § 440.9102(1)(a) (emphasis supplied.)[3]

Except in instances when a secured party is in possession of collateral in accordance with an agreement, creation and attachment of a valid security interest require: (1) the debtor to sign an agreement which adequately describes the collateral, (2) value to be given, and (3) the debtor to have rights in the collateral. Mich.Comp.Laws Ann. § 440.9203(1). The security interest

---

**2.** Mich.Comp.Laws Ann. § 440.9313(3) states: "[t]his article does not prevent creation of an encumbrance upon fixtures pursuant to real estate law."

**3.** As discussed herein, the U.C.C. method of obtaining an interest in fixtures is non-exclusive; an interest in fixtures may be obtained under state real estate law. Mich.Comp.Laws Ann. § 440.9313(3).

attaches when all three events take place, absent an explicit agreement to postpone the attachment. Mich.Comp.Laws Ann. § 440.9203(2). *Cf. West. Dist. of Mich. Trustees, Inc. v. First of America Bank–Ludington (In re Pierce)*, 63 B.R. 740, 741 (Bankr.W.D.Mich.1986) (holding once attachment of security interest occurs under U.C.C. § 9–203 the attachment is not affected by the debtor's subsequent modification of the collateral).

To perfect a personal property interest in a fixture, and be accorded proper priority, a financing statement must be filed.[4] Mich.Comp.Laws Ann. § 440.9302(1)(d). To be sufficient, a financing statement must: (1) state the names of the debtor and secured party, (2) be signed by the debtor, (3) provide the address of the secured party to allow inquiry about information regarding the security interest, (4) provide the mailing address of the debtor, and (5) contain a statement setting forth types or describing items of collateral. Mich.Comp.Laws Ann. § 440.9402(1). In addition, a financing statement covering fixtures or goods to become fixtures must: (6) state that it covers this type of collateral; (7) recite it is to be recorded in the real estate records; (8) contain a description of the real estate where the fixtures are located or to be located, which is sufficient to provide constructive notice under state real estate mortgage law; and (9) if the debtor does not have an interest of record in the real estate, the owner of record must be disclosed. Mich.Comp.Laws Ann. § 440.9402(5).

The financing statement which covers fixtures, or goods to become fixtures, must be filed where a mortgage on the real estate would be recorded. Mich.Comp. Laws Ann. § 440.9401(1)(b). In Michigan, an interest in real estate is properly recorded at the register of deeds in the county in which the real estate is located. Mich. Comp.Laws Ann. §§ 53.145; 565.1; 565.23. When a sufficient financing statement is filed in the proper place, a "fixture filing" occurs. Mich.Comp.Laws Ann.

§ 440.9313(1)(b). After a proper fixture filing, a secured party has a perfected interest in the fixtures and may enforce its security interest against other persons according to designated priorities. Mich. Comp.Laws Ann. § 440.9313(4), (5), (6) and (7).

Under the U.C.C., a mortgage may be effective as a fixture filing from the date of its recordation provided four specified requirements are met, including that the mortgage describes the goods by "item or type". Mich.Comp.Laws Ann. § 440.9402(6)(a). An issue exists whether this U.C.C. subsection mandates that a mortgage creating an interest in fixtures under state real estate law must contain a sufficient description of the fixtures, or the goods to become fixtures, by "item or type". At the hearing, some argument was made that if a mortgage fails to include such a description, no valid interest in fixtures can be created under state real estate law. The court has been unable to discover any reported case which addresses this issue.

As discussed above, an interest in fixtures, or goods which become fixtures, may be created under state real estate law, *or* under the U.C.C. State real estate law creates real property interests in fixtures while the U.C.C. allows creation of personal property interests in fixtures. The U.C.C. establishes priorities resolving conflict between these distinct legal creatures on "turbulent waters ... with difficulty". White & Summers, *Uniform Commercial Code* 1151 (3rd ed. 1988).

A "sufficient" fixture filing requires a "statement indicating the types or describing the items of collateral." Mich.Comp. Laws Ann. § 440.9402(1). A complying mortgage filed in lieu of a financing statement must also contain, among other things, a description of goods "by item or type". Mich.Comp.Laws Ann. § 440.9402(6). The U.C.C. requires, whether a fixture filing is accomplished by filing

---

**4.** Although the filing of a financing statement is not required when automatic perfection occurs or the secured party has possession of the collat- eral, those exceptions are not germane to this matter.

a financing statement or recording a complying mortgage, the information included must be the same. However, the U.C.C. also permits a valid security interest in fixtures to be created under state real estate law. Mich.Comp.Laws Ann. § 440.9313(3).

■ The U.C.C. requirement that the type or items of collateral be adequately described applies *only* to the creation and perfection of personal property interests in fixtures under the U.C.C.; this U.C.C. requirement does not apply to creation and perfection of real property interests in fixtures under state real estate law. U.C.C. law and state real estate law are *separate* and *distinct methods* by which interests in fixtures are created and perfected. The court therefore rejects any argument that the collateral must be explicitly described by item or type in a mortgage which otherwise creates an interest in fixtures under state real estate law.

### Do the Creditors Hold a Valid Interest in the Chairlift and the Proceeds?

FOA's mortgage on the real property where the chairlift was affixed was granted on July 24, 1980; the mortgage was properly recorded on August 1, 1980. The mortgage granted FOA an interest in the real property together with "all improvements now or hereafter created on the property ... and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this mortgage."

When a fixture becomes complemental to real property, it becomes a permanent accession and the fixture becomes part of the security with regard to any existing mortgage. *Sequist v. Fabiano,* 274 Mich. at 646, 265 N.W. at 489. The language in FOA's prior recorded mortgage is sufficient to create and perfect its interest in the chairlift fixture under state real estate law. FOA retained its interest in the proceeds pursuant to this court's order whereby valid liens would attach to the proceeds of the sale. 11 U.S.C. §§ 363(e); 361(2); *cf.* Mich.Comp.Laws Ann. § 440.9306.

■ Cliff's Ridge Dev.'s mortgage on the real property where the chairlift was affixed was granted on November 22, 1982; the mortgage was properly recorded on November 23, 1982. The mortgage itself recognizes FOA's prior mortgage and states Cliff's Ridge Dev.'s interest is subordinate to FOA's prior mortgage. Cliff's Ridge Dev.'s mortgage grants an interest in the real property together "with the hereditaments and appurtenances thereunto belonging or in anywise appertaining." There is no language in the mortgage relating to "fixtures". An "appurtenance" is an "article adapted to the use of the property to which it is connected, and which was intended to be a permanent accession to the freehold." *Black's Law Dictionary* 94 (5th Ed. West Publishing Co.1979). An "appurtenance" is equivalent to a "fixture".

A mortgage covers fixtures even when they are not explicitly mentioned in the mortgage. *Tyler v. Hayward,* 235 Mich. at 676, 209 N.W. at 802. If the chairlift became connected to the real property after the grant of Cliff's Ridge Dev.'s mortgage, Cliff's Ridge Dev. has an interest in the chairlift; the appurtenance or fixture becomes part of the security with regard to any existing mortgage. *Sequist v. Fabiano,* 274 Mich. at 646, 265 N.W. at 489. On the other hand, if the chairlift became connected to the real property before the grant of the mortgage, the chairlift would be covered by the subsequent mortgage without a special mention in the mortgage. *Tyler v. Hayward,* 235 Mich. at 676, 209 N.W. at 802. Therefore, under state real estate law, Cliff's Ridge Dev. has an interest in the chairlift. Cliff's Ridge Dev. also has an interest in the proceeds from the chairlift sale in accordance with the court's prior order. 11 U.S.C. §§ 363(e); 361(2); *cf.* Mich.Comp.Laws Ann. § 440.9306.

On December 13, 1982, the Debtor granted the EDC a security interest in the chairlift. On the same date, the EDC assigned its security interest to First National. As of December 13, 1982, the Debtor had signed a security agreement which described the collateral and rights in the col-

lateral. On December 17, 1982, First National made its first loan disbursement of $100,000 to the Debtor. Since there was no agreement to postpone attachment of the security interest, First National's attachment of the security interest occurred on December 17, 1982. Mich.Comp.Laws Ann. § 440.9203(2).

On December 14, 1982, a financing statement regarding the chairlift was filed where mortgages are recorded with the Marquette County Register of Deeds. The form of the financing statement meets all the necessary requirements under the U.C.C.Mich.Comp.Laws Ann. § 440.9402(1) and (5). A sufficient financing statement regarding the chairlift fixture was filed in the proper place and a "fixture filing" occurred. Mich.Comp.Laws Ann. §§ 440.-9313(1)(b); 440.9401(1)(b). First National therefore holds a perfected personal property interest in the chairlift under the U.C.C. It now also holds an interest in the sale proceeds pursuant to this court's prior order. 11 U.S.C. §§ 363(e); 361(2); *cf.* Mich.Comp.Laws Ann. § 440.9306.

If these were the only facts and law to be applied, the court would now easily apply the U.C.C. priority rules and determine entitlement to the sale proceeds. Unfortunately, sorting out commercial security transactions is not always so simple.

*Does First National Hold a Purchase Money Security Interest in the Chairlift and the Proceeds?*

■ First National asserts it held a purchase money security interest in the chairlift. First National therefore argues it is entitled to the sale proceeds because it holds an interest which is superior to FOA's and Cliff's Ridge Dev.'s mortgage interests.

The general rule of priority is that a security interest in fixtures is subordinate to a conflicting interest held by a mortgagee of the related real estate. Mich.Comp. Laws Ann. § 440.9313(7).[5] Under the general rule, FOA's and Cliff's Ridge's mortgage interests would be superior to First National's interest in the chairlift fixture.

One exception to the general rule governs where the security interest in fixtures is (1) a purchase money security interest, (2) the interest of the mortgagee arose before the goods became fixtures, (3) a valid fixture filing occurred before the goods became fixtures or within 10 days thereafter, and (4) the debtor has an interest of record in the real estate. Mich. Comp.Laws Ann. § 440.9313(4)(a).[6]

The first requirement raises the threshold issue: Does First National hold a purchase money security interest? Mich. Comp.Laws Ann. § 440.9107 states:

A security interest is a "purchase money security interest" to the extent that it is (a) taken or retained by the seller of the collateral to secure all or part of its price; or (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

The Debtor purchased the chairlift from the Breckenridge Ski Area sometime after April or May, 1982 on a cash-on-delivery basis. Therefore, First National was not the "seller of the collateral" and no purchase money security interest arose under Mich.Comp.Laws Ann. § 440.9107(a).

First National advanced funds to the Debtor pursuant to the loan transaction—$100,000 was disbursed on December 17, 1982 and $49,864.34 was disbursed on December 23, 1982. The chairlift was delivered in August, 1982. The parties have

---

**5.** Mich.Comp.Laws Ann. § 440.9313(7) states: "In cases not within the preceding subsections, a security interest in fixtures is subordinate to the conflicting interest of an encumbrancer or owner of the related real estate who is not the debtor."

**6.** Mich.Comp.Laws Ann. § 440.9313(4)(a) states: "A perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real estate where: (a) The security interest is a purchase money security interest, the interest of the encumbrancer or owner arises before the goods become fixtures, the security interest is perfected by a fixture filing before the goods become fixtures or within 10 days thereafter, and the debtor has an interest of record in the real estate or is in possession of the real estate[.]"

stipulated that the sale was to be on a cash-on-delivery basis although it is also stipulated that the time that Breckenridge was actually paid is not known. Because delivery of the chairlift occurred approximately four months before First National made any loan advance, the court concludes the value given by First National did not "enable" the Debtor to acquire the chairlift. Further, there are no facts in the record to support that the value, i.e., the funds disbursed by First National, was "in fact so used" by the Debtor to purchase the chairlift. Although the Debtor paid $65,000 for the chairlift, the Debtor also paid $10,000 for shipping, $7,500 for engineering, and approximately $80,000 for erection of the chairlift. Given the stipulated facts that (1) the chairlift was delivered in August, 1982; (2) the erection of the chairlift towers commenced in September, 1982; (3) the erection of the towers was completed by November 15, 1982; (4) the cable was strung in November, 1982; (5) the cable was spliced on December 2, 1982; and (6) the chairlift was tested with the chairs in place on December 7, 1982—it thus appears that the costs were either paid, or incurred, by the Debtor prior to the time First National made the advances.

First National has the burden of proof, by preponderance of evidence, to demonstrate that it holds a purchase money security interest pursuant to the statutory requirements of Mich.Comp.Laws Ann. § 440.9107(b).[7] Based upon the court's findings of fact, First National has failed to meet its burden of proof.[8] The court concludes it does not hold a purchase money security interest in the chairlift.

*Subordination by FOA to First National.*

■ FOA agreed to subordinate its interest in the chairlift to First National pursuant to the Subordination Agreement on December 13, 1982. (Exhibit X.) FOA now argues that the Subordination Agreement is not enforceable because of lack of consideration.

11 U.S.C. § 510(a) states: "A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." Property interests are determined by reference to applicable state law; absent a federal interest, property interests should not be analyzed differently as a result of a party's involvement in a bankruptcy case. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). A bankruptcy court should not modify rights, or create additional rights or remedies, where such rights and remedies do not exist outside of bankruptcy law unless such rights and remedies are authorized by the Bankruptcy Code. *Schewe v. Fairview Estates (In re Schewe)*, 94 B.R. 938, 949–950 (Bankr.W.D.Mich.1989).

■ Mich.Comp.Laws Ann. § 440.9316 states: "Nothing in this article prevents subordination by agreement by any person entitled to priority." The Official U.C.C. Comment addresses the intent of this statutory subsection and states:

This Section is inserted to make it entirely clear that a person entitled to priority may effectively agree to subordinate his claim. Only the person entitled to priority may make such an agreement: his rights cannot be adversely affected by an agreement to which he is not a party.

When a subordination agreement is enforceable under state law, it will be upheld by a bankruptcy court. *Robinson v. Howard Bank (In re Kors, Inc.)*, 819 F.2d 19, 24 (2nd Cir.1987).

Therefore, the issue to be addressed is whether the Subordination Agreement between FOA and First National is valid and enforceable under state law. In *Levitz v.*

---

7. In the Practice Commentary to Mich.Comp. Laws Ann. § 440.9107, it is stated, "To attain such [purchase money security interest] status there must be (1) new value, (2) which enabled the debtor to acquire the property and (3) *the financial institution must be able to prove that the new value was actually used by the debtor to acquire the property.*" (Emphasis added.)

8. Because First National has not established it has a purchase money security interest in the chairlift, the court need not consider or analyze the other three requirements set forth in Mich. Comp.Laws Ann. § 440.9313(4)(a).

*Capitol Sav. & Loan Co.*, 267 Mich. 92, 255 N.W. 166 (1934), the Michigan Supreme Court addressed the requirements of a valid and enforceable subordination agreement. The Court stated:

A subordination agreement is valid when based on a valuable consideration. 1 Jones, Mortgages (8th Ed.), 1105; *Wayne International Building & Loan Ass'n v. Moats*, 149 Ind. 123 (48 N.E. 793); *Fudickar v. Monroe Athletic Club*, 49 La.Ann. 1457 (22 South. 381); *Mutual Life Ins. Co. of New York v. Sturges*, 33 N.J.Eq. 328; *Frost v. Yonkers Savings Bank*, 70 N.Y. 553 (26 Am. Rep. 627); *Clason v. Shepherd*, 6 Wis. 369; *Grunert v. Becker*, 100 Mich. 50 [58 N.W. 608]; *Shapero v. Picard*, 235 Mich. 481 [209 N.W. 576].

The consideration necessary to support a contract is a "benefit to the promisor or a detriment to the promisee." 1 Williston, Contracts, § 102; *Sanford v. Huxford*, 32 Mich. 313, 315 (20 Am.Rep. 647); *Smith v. Maxey*, 186 Mich. 151, 165 [152 N.W. 1011]; *Steep v. Harpham*, 241 Mich. 652, 656 [217 N.W. 787].

. . . .

It is not necessary that there be an equal exchange of consideration. The law does not inquire into the adequacy of the consideration. 1 Williston, Contracts, § 115. It is enough if the consideration is given, in whole or in part, in exchange for the promise.

*Levitz v. Capitol Sav. & Loan Co.*, 267 Mich. at 96–97, 255 N.W. 166. In *Levitz*, the court determined that sufficient consideration existed because benefit was given

to the Plaintiff and detriments were suffered by the Defendant.

In this matter, partially as a result of the December 13, 1982 Subordination Agreement, First National advanced funds to the Debtor on December 17 and 23, 1982, in the respective amounts of $100,000 and $49,-864.39. No one can seriously argue that First National did not suffer detriment. FOA received the benefit of the chairlift improvement on the ski hill, without additional cost, thereby possibly improving the value of its collateral as a whole, notwithstanding its subordination.

Under Michigan law, the court concludes that the Subordination Agreement between FOA and First National is valid and enforceable between those parties.[9] However, Cliff's Ridge Dev. was not a party to the Subordination Agreement and there exists no fact in the record which supports a conclusion that Cliff's Ridge Dev. validly subordinated its interest in the chairlift to First National. Therefore, the Subordination Agreement does not affect Cliff's Ridge Dev.'s interest in the chairlift or its relative priority in the sale proceeds from the chairlift.

*Resolution of Priority to Chairlift Proceeds.*

Priority of competing or conflicting interests in a fixture is governed by the U.C.C. In certain specified instances, a holder of a perfected security interest in a fixture will have priority over a prior encumbrancer under real estate law. Mich. Comp.Laws Ann. § 440.9313(4).[10] An en-

**9.** FOA has argued that Mich.Comp.Laws Ann. § 566.1, which states that an agreement, in writing signed by the party to be charged, to modify or discharge a contract, mortgage, or security interest in personal or real property shall not be invalid for lack of consideration, is inapplicable. The court, having found consideration exists in connection with the Subordination Agreement, need not decide whether the statute is applicable or not. The court also recognizes that a persuasive argument exists that FOA should be estopped from now arguing lack of consideration; this issue likewise need not be further considered.

**10.** Mich.Comp.Laws Ann. § 440.9313(4) states:

A perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real estate where:
(a) The security interest is a purchase money security interest, the interest of the encumbrancer or owner arises before the goods become fixtures, the security interest is perfected by a fixture filing before the goods become fixtures or within 10 days thereafter, and the debtor has an interest of record in the real estate or is in possession of the real estate; or
(b) The security interest is perfected by a fixture filing before the interest of the encumbrancer or owner is of record, the security interest has priority over any conflicting interest of a predecessor in title of the encum-

cumbrancer includes the holder of a real estate mortgage. Mich.Comp.Laws Ann. § 440.9105(1)(g).[11] In other instances, a holder of a perfected security interest in a fixture will be subordinate to a conflicting interest of an encumbrancer of the related real estate. Mich.Comp.Laws Ann. § 440.9313(7).[12]

A leading commentator has succinctly stated the U.C.C. fixture priority general rule which is germane to this dispute. This court sees no need to attempt to improve the comment or restate the general rule. "The first-in-time-first-in-right rule runs throughout Article Nine, and 9–313 is no different.... If the fixture lender perfects by a fixture filing before the real estate creditor files a mortgage on the real estate to which the goods have become affixed, the fixture lender has priority. If the mortgagee files first, he wins." White & Summers, *Uniform Commercial Code* 1156 (3rd ed. 1988).

In accordance with this court's factual findings, the general fixture priority rule initially governs. First National does not hold a perfected purchase money security interest in the chairlift. Cliff's Ridge Dev., as an encumbrancer, did not consent in writing to First National's security interest or disclaim its interest in the chairlift as a fixture. No other specific exception to the general fixture priority rule is applicable. Therefore, *absent* FOA's *subordination*, the priority of the parties' interests in the chairlift would be: First, FOA as a real estate encumbrancer; second, Cliff's Ridge Dev. as a real estate encumbrancer; and

third, First National as holding a perfected security interest.

As a result of the Subordination Agreement between FOA and First National, the respective initial priorities have been consensually altered. However, Cliff's Ridge Dev.'s priority has not been affected because it was not a party to the subordination. Based upon the subordination, the priority is altered as follows: (1) FOA is prior to Cliff's Ridge Dev.; (2) Cliff's Ridge Dev. is prior to First National; and (3) First National is prior to FOA. The classic circular priority conundrum (of the kind briefly addressed, but seldom resolved, in law school) therefore exists. How should the circular priority be resolved? The parties and the court have been unable to discover any Michigan reported cases discussing circular priorities.

■ FOA urges the court to divide the proceeds among the three parties on an equitable basis. If FOA requests this court to split the proceeds among the three competing claimants in a fashion the court arbitrarily deems to be "fair", this court declines such an invitation. *Cf., United States v. Darnell (In re Darnell)*, 834 F.2d 1263 (6th Cir.1987) (a bankruptcy court should resolve competing tax lien priorities in accordance with non-bankruptcy law, "first-in-time-first-in-right", rather than on a pro-rata basis). However, if the applicable U.C.C. priority statute does not resolve the circular priority dispute (and it does not), this court agrees with FOA that non-bankruptcy case law and equitable principles may be utilized to establish the appropriate priorities of the parties.[13]

---

brancer or owner, and the debtor has an interest of record in the real estate or is in possession of the real estate; or

(c) The fixtures are readily removable factor or office machines or readily removable replacements of domestic appliances which are consumer goods, and before the goods become fixtures the security interest is perfected by any method permitted by this article; or

(d) The conflicting interest is a lien on the real estate obtained by legal or equitable proceedings after the security interest was perfected by any method permitted by this article.

**11.** Mich.Comp.Laws Ann. § 440.9105(1)(g) states:

"Encumbrance" includes real estate mortgages and other liens on real estate and all other rights in real estate that are not ownership interests.

**12.** Mich.Comp.Laws Ann. § 440.9313(7) states: In cases not within the preceding subsections, a security interest in fixtures is subordinate to the conflicting interest of an encumbrancer or owner of the related real estate who is not the debtor.

**13.** The U.C.C. explicitly states that "[u]nless displaced by the particular provisions of [the U.C.

The court believes that the effect of the Subordination Agreement should be construed as FOA and First National having "traded places" to the extent of the money advanced by First National to the Debtor for the chairlift loan which remains unpaid or the remaining mortgage balance owed to FOA by the Debtor, whichever is less.[14] By so doing, Cliff's Ridge Dev.'s interest and its original priority position will not be adversely or beneficially affected by the other parties' subordination agreement.

After a careful review of the case law cited by the parties and after conducting independent research, this court has determined to follow the circular priority formula set forth in *ITT Diversified Credit Corp. v. First City Capital Corp.*, 737 S.W.2d 803, 804, 4 U.C.C.Rep.Serv.2d 927, 929 (1987):

> For example, A, B and C have claims against the debtor which are entitled to priority in alphabetical order. "A" subordinates his claim to "C." After foreclosure of the secured interest, the resulting fund is insufficient to satisfy all three claims. The proper distribution of the fund is as follows.
>
> 1.  Set aside from the fund the amount of "A"'s claim.
> 2.  Out of the money set aside, pay "C" the amount of its claim, pay "A" to the extent of any balance remaining after "C"'s claim is satisfied.
> 3.  Pay "B" the amount of the fund remaining after "A"'s claim has been set aside.
> 4.  If any balance remains in the fund after "A"'s claim has been set aside and "B"'s claim has been satisfied, distribute the balance to "C" and "A".
>
> *See* Gilmore, *Security Interests in Personal Property* § 39.1 at 1021 (1965).
>
> Thus, "C", by virtue of the subordination agreement, is paid first, but only to the amount of "A"'s claim, to which "B" was in any event junior. "B" receives what it had expected to receive, the fund

less "A"'s prior claim. If "A"'s claim is smaller than "C"'s, "C" will collect the balance of its claim, in its own right, only after "B" has been paid in full. "A", the subordinator, receives nothing until "B" and "C" have been paid except to the extent that its claim, entitled to first priority, exceeds the amount of "C"'s claim, which, under its agreement, is to be first paid.

*Cf. Fidelity Union Title & Mort. Guar. Co. v. Magnifico*, 106 N.J.Eq. 559, 151 A. 499 (1930) (intermediate judgment creditor maintains its position in relation to its original priority); *Wayne Int'l Bldg. & Loan Assoc. v. Moats*, 149 Ind. 123, 48 N.E. 793 (1897) (when a senior mortgagee waives its lien for benefit of a junior mortgagee, the junior mortgagee only succeeds to the senior mortgagee's lien amount; other lienholders cannot complain of the order in which the senior lien is marshalled); *Malmgren v. Phinney*, 50 Minn. 457, 52 N.W. 915 (1892) (agreement regarding subordination by two mortgagees did not affect intervening lienholder's statutory rights).

Cliff's Ridge Dev. argues that the subordination by FOA to First National mandates that FOA's initial first priority status should be entirely relegated to a third position behind *both* Cliff's Ridge Dev. and First National citing *Shaddix v. Nat'l Surety Co.*, 221 Ala. 268, 128 So. 220 (1930); *McConnell v. Mortgage Investment Co. of El Paso*, 292 S.W.2d 636 (Tex. Civ.App.1955), aff'd 157 Tex. 572, 305 S.W.2d 280 (1957) and *Ladner v. Hogue Lumber & Supply Co.*, 229 Miss. 505, 91 So.2d 545 (1956). If this argument is accepted, Cliff's Ridge Dev. would be beneficially elevated to the first priority and become entitled to receive the chairlift sale proceeds.

This court declines to follow those cases cited by Cliff's Ridge Dev. and rejects its argument. FOA did not subordinate its entire real estate mortgage to First Nation-

---

C.], the principles of law and equity ... shall supplement its provisions." Mich.Comp.Laws Ann. § 440.1103.

**14.** The amount of money ultimately received by a party pursuant to a subordination agreement may be further limited by the value of the collateral which is subject to such agreement. 11 U.S.C. § 506(a).

al; FOA only subordinated its mortgage interest to the extent it covered the chairlift to be attached as a fixture. The partial subordination by FOA is more akin to the facts of *ITT Diversified* rather than those cases relied upon by Cliff's Ridge Dev. More importantly, this court strongly believes that the better reasoned resolution of the circular priority dilemma mandates that Cliff's Ridge Dev.'s initial priority should not be altered, either beneficially or adversely, as a result of a subordination agreement to which it was not a party.[15]

FOA, Cliff's Ridge Dev. and First National each hold claims in amounts in excess of the proceeds realized from the sale of the chairlift.[16] Applying the circular priority formula set forth in *ITT Diversified*, after paying "C" (First National) a portion of the amount of its claim, the fund is completely exhausted. No remaining funds are available for distribution to either "A" (FOA) or "B" (Cliff's Ridge Dev.).

### CONCLUSION

The court holds First National has priority to all proceeds from the sale of the chairlift, and the interest earned therefrom, which are now being held in escrow. An order shall be entered accordingly.

---

**15.** This is analogous to the result when a bankruptcy trustee avoids a transfer of a security interest, mortgage or other lien for the benefit of the estate. In effect, the trustee steps into the shoes of the entity which held the avoided interest. The avoided security interest, mortgage, or other lien is automatically preserved for the estate. 11 U.S.C. § 551. A junior lienholder maintains its previous priority position and is not elevated in position as a result of the trustee successfully exercising one of the avoidance powers.

**16.** No other collateral is now available to be distributed to the parties.